C. E. H. McDONNELL, as Trustee in Reorganization of Equitable Plan Company, Plaintiff-Appellant,

v.

AMERICAN LEDUC PETROLEUMS, LTD., et al., Defendants,

and

Ruby Schinasi, Defendant-Appellee.

No. 34, Docket 73–1172.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1973.

Decided Jan. 23, 1974.

Robert S. Stitt, New York City (George W. Taliaferro, Jr., and Thacher, Proffitt & Wood, New York City, on the brief), for plaintiff-appellant.

David E. Pitcher, Jr., New York City (Corbin, Bennett & Delehanty, New York City, on the brief), for defendant-appellee.

Before MOORE, HAYS and FEIN-BERG, Circuit Judges.

HAYS, Circuit Judge:

C. E. H. McDonnell, a trustee in reorganization of the Equitable Plan Company, commenced this action against

Mrs. Ruby Schinasi and others to recover losses suffered by Equitable. The district court originally found Mrs. Schinasi not guilty of fraud. On appeal we remanded for consideration of the trustee's claim that Mrs. Schinasi was negligent in performance of her duties as a director and officer of Equitable. 456 F.2d 1170 (2d Cir. 1972). On remand the district court found Mrs. Schinasi not guilty of any negligence which proximately caused Equitable's losses. On this appeal we hold that the facts found by the district court establish Mrs. Schinasi's negligence as a matter of law with respect to certain acts. We therefore reverse in part and remand.

## I. FACTS

The previous decisions of this court and the district court have described the demise of the Equitable Plan Company. In this opinion we shall focus on certain aspects of the facts which are germane to this appeal.

Mrs. Schinasi had been a friend of one Lowell Birrell for many years. In 1953 Birrell decided to purchase Equitable and to mask his ownership by using Mrs. Schinasi as a front. Birrell persuaded Mrs. Schinasi to invest in Equitable. California Investment Company (Calico) was formed to take title to Equitable's stock. Birrell told appellee, and she believed, that she actually owned Calico and, through it, Equitable. In fact Calico was owned by a succession of corporations controlled by Birrell.

Although she had little business experience prior to 1953, Mrs. Schinasi served as a director of Equitable from October, 1953 to July, 1957 and as its president from April 4, 1954 until February 1, 1957. At no time did she actively participate in the management of the firm.

After the takeover by Calico, Equitable pursued a questionable loan policy. It made several large loans (referred to by the California Division of Corporations as the "Eastern loans") to speculative firms controlled by Birrell. These loans were often secured by shares of the borrower's stock or stock of other unstable concerns controlled by Birrell.

In April, 1955, after discovering Equitable's new policies, the California Division of Corporations, which regulates industrial loan companies like Equitable, conducted hearings with respect to Equitable's operations. At the conclusion of the hearings the Division required Mrs. Schinasi to promise under oath to keep the recently hired Blau and Seltzer as co-managers of the corporation and "to allow them to have a free hand in the loans they will make." She also promised that Equitable would make no further loans to companies associated with Birrell and that the then existing loans of this type would be liquidated as rapidly as possible. Thereafter Mrs. Schinasi took no action with respect to the Eastern loans except to remind Birrell that they should be paid. Whenever asked to sign papers she did so unhesitatingly in the belief that her promise required her to do so.

Between 1954 and 1957 Mrs. Schinasi received five warnings about mismanagement of Equitable. These warnings were in the form of letters and memoranda from various persons associated with Equitable. Appellee neither investigated the statements contained in these warnings nor passed them on to the Division of Corporations. Instead, she gave them to Birrell, who was the object of many of the complaints, and accepted his assurances that the problems mentioned would be corrected.

On May 25, 1956, after a series of disagreements with Birrell (who, despite appellee's promise to let Blau and Seltzer control loan-making policy, continued to exercise considerable authority over that policy), Blau and Seltzer left Equitable. On June 1, 1956 Harry Slavin took managerial control of the company. Mrs. Schinasi maintained her passive role in the company's affairs. In the ensuing period Equitable renewed many of the practices to which the Division of Corporations had objected. Equitable's financial position deteriorated until July 1, 1957, when the Division suspend-

ed the authority of Equitable to make loans. On December 20, 1957 the Division took control of Equitable for the purpose of liquidating it.

## II. THE DECISION OF THE DISTRICT COURT

■ The district court held, and we agree, that the appellee's fiduciary duties are defined by California law, since Equitable was a California corporation with offices only in that state and since Equitable's investors were primarily Californians.

■ The district court found no authority for plaintiff's claim that California law imposes a higher standard of care on directors of financial institutions than on directors of other corporations. The standard for all directors is "that degree of care that men of common prudence take of their own concerns." National Automobile & Casualty Insurance Co. v. Payne, 261 Cal.App. 2d 403, 67 Cal.Rptr. 784 (1st Dist. 1968). We agree with both findings.

Applying this standard, the district court found that Mrs. Schinasi had been negligent in failing to examine the books of the company. However, the court held that this failure to act did not proximately cause any loss to Equitable.

The court found other acts and omissions excused by the promise to the Division of Corporations. It held that Mrs. Schinasi had interpreted the promise to bar interference with the management of the company. Without deciding whether this interpretation was correct the lower court held it not unreasonable, and it concluded that her interpretation was protected by the business judgment rule. The court therefore absolved appellee of any liability.

## III. THE PROMISE TO THE DIVISION OF CORPORATIONS

■ The California Division of Corporations ordered the April, 1955 hearings when it discovered the loan policy adopted by Equitable's new management. At the close of the hearings Birrell promised that no new loans would be made to companies with which he was associated, and that outstanding loans to such companies would be liquidated as soon as possible. Mrs. Schinasi knew the purpose of the hearings and attended the session at which these promises were made. Immediately after the promise by Birrell the following colloquy occurred between Mrs. Schinasi and Mr. Pearce, the Deputy Commissioner of the Division of Corporations:

> Mr. Pearce: Now, Mrs. Schinasi, is it your intention provided Mr. Seltzer and Mr. Blau are successful from the standpoint of making profits for Equitable Plan Company, without binding yourself, of course, if cause exists in the future, is it your present intention to keep them on as permanent co-managers of the Company?

> Mrs. Schinasi: . Yes.

> Mr. Pearce: And is it your intention since you are the sole equity owner of the Company that owns the sole equity in Equitable Plan and, therefore, would be in a position to change the Board almost without notice on special meeting, to allow Mr. Seltzer and Mr. Blau who have made a contract of employment with the firm, carrying incentive to them as well as salary in proportion somewhat to the profits they are able to make, to allow them to have a free hand in the loans they will make?

> Mrs. Schinasi: It is my intention to so do.

There is room for disagreement about how far the Division intended this promise to restrict Mrs. Schinasi's activities in the company. We cannot agree with the trustee's claim that after the hearings she should have intensified supervision. But neither can we accept appellee's view that the promise required her to remain passive and to sign whatever papers were presented to her. The hearings and the promises took place in the context of the Division's grave dissatisfaction with Equitable's loan policies and its insistence that this policy change. The promise referred

only to loan-making policy and not to other aspects of the management of the corporation. The promise cannot excuse illegal purchases of stock or abuse of expense accounts, which we shall discuss further below.

The promise to leave loan-making policy to Blau and Seltzer [1] must be reconciled with the prohibition on loans to companies associated with Birrell. Giving the appellee the benefit of the doubt we think that the reasonable interpretation of the promise is that appellee would not interfere with loan-making policy, except that she would not knowingly permit or abet loans which violated the order of the Division of Corporations. At the least Mrs. Schinasi should have informed the Division of violations of its orders.[2] Instead she permitted and ratified such acts.

The business judgment rule protects only reasonable acts of a director or officer. Burt v. Irvine Co., 237 Cal.App. 2d 828, 851–855, 47 Cal.Rptr. 392, 407– 409 (1st Dist. 1965). Appellee's interpretation of her promise to the Division of Corporations was, in several respects, not reasonable.

## IV.   ALLEGED ACTS OF NEGLIGENCE

### A.   *Purchase of Swan-Finch Common Stock*

On July 2, 1956 appellee executed a letter authorizing a purchase by Equita-

ble of 8,800 shares of Swan-Finch common stock. Under the California Industrial Loan Law it was improper for an industrial loan company to invest in common stocks.

In California a corporate officer is liable to the corporation for statutory violations committed by him while acting as an agent of the corporation. Southern Counties Thrift Co. v. Rairdon, 47 Cal.App.2d 770, 771, 118 P.2d 828, 829 (4th Dist. 1941). The district court found appellee not liable for this because of her promise to the Division of Corporations. But Mrs. Schinasi promised only to allow Blau and Seltzer "a free hand in the loans they will make." This cannot be reasonably construed as requiring her to authorize an illegal purchase of stock, especially when Swan-Finch was a Birrell company. We therefore reverse on this point and remand for determination of damages.

### B.   *Renewal of Prohibited Loans*

In June, 1954 Equitable made three loans of $150,000 each to Echo Falls Oil Corp. (through L. L. Constantin & Co.), Greater New York Industries, and Bartels Brewing Co. All were dominated by Birrell. Appellee knew of these loans when made. In May and December of 1956 these loans were renewed in violation of the order of the Division of Corporations.

Appellant claims, and submits documents tending to show, that Equitable's

1. We note that Blau and Seltzer left Equitable on May 25, 1956 after a deterioration of the relations between Blau and Birrell. The disagreements concerned Blau's refusal to make certain loans proposed by Birrell. On June 1, 1956 Harry Slavin took managerial control of the company. Mrs. Schinasi had promised to leave control of the loan-making policy to Blau and Seltzer. Their departures after disputes with Birrell should have alerted her because Equitable's relations with Birrell had been the object of the April, 1955 hearings. Again, she should at least have consulted the Division. She failed to do so. As a result, during the tenure of Slavin Equitable was systematically looted to shore up Birrell's shaky financial enterprises.

2. The district court found that even had she done so ". . . there is no evidence

that the Division would have undertaken a more extensive investigation. . . ." This seems to conflict, however, with the court's finding that the Division, though acting competently, "was frequently unaware of significant facts because they were withheld" and that several matters "which would have called for further investigation and action by the Division were not brought to its attention." Indeed, the court specifically found that had the Division known of the violations of its orders which occurred after Slavin took control of the company "it would have acted immediately to halt them." Thus to the extent that Mrs. Schinasi knew, or should have known through examination of the books, of these violations, her negligence must be deemed a proximate cause of the corporation's losses.

journals for May, 1956 show the renewals of the June, 1954 loan and that an examination of the books would have informed appellee of the renewals. The district court found that appellee was negligent in failing to examine the books, but that this negligence did not proximately cause any loss to Equitable because it would not have alerted her to any wrongdoing. However, Mrs. Schinasi knew that such renewals would violate the April, 1955 order, and therefore if examination of the books would have informed her of the renewals it would have alerted her to wrongdoing.

We therefore remand for determination of whether the books contain such information as appellant alleges and, if necessary, for determination of damages.

### C. *Confirmation of Prohibited Loans*

The trustee alleges, and submits documents tending to show, that in June, 1956 Mrs. Schinasi executed two receipts confirming loans which violated the order of the Division of Corporations. The court below, apparently believing this act justified by the promise to the Division, made no findings of fact on this issue. We have held that the promise cannot justify affirmative acts which violated the order of the Division. We therefore remand for determination of whether appellee actually signed these receipts and to what extent she knew or should have known that the companies to which these loans were made were dominated by Birrell. Based on these findings the court must also determine the damages to be assessed.

### D. *Mrs. Schinasi's Expense Account*

The trustee alleges that over $50,000 was charged to Mrs. Schinasi's expense account during her association with Equitable. This sum falls into three categories. First, there is money received and used by appellee for legitimate purposes. Of course she is not liable for this amount.

Second, Mrs. Schinasi often took amounts of cash and handed them to Birrell or his personal friends. A reasonable person would not do this without prior assurances that the money would be spent for legitimate corporate purposes, and subsequent proof that it had been so spent. Further, a reasonable person would not have charged such cash withdrawals to an expense account rather than indicating the true purpose for the funds. We therefore remand for determination by the district court of how much damage the corporation suffered by use of these funds for non-corporate purposes.

Third, there are sums which were charged to appellee's expense account but which she never received. The trustee claims that these charges were listed in a private ledger to which the general ledger referred. The district court made no findings on this claim. As the district court found appellee negligent for failure to examine the books of the company, it follows that this failure was the proximate cause of the loss of these expenses charged to her but never received by her. We therefore remand for consideration of the trustee's claim that the records were available to appellee and, if so, of damages.

### CONCLUSION

The depositors of Equitable, who lost their money, had a right to believe that Mrs. Schinasi, as director, president, and purported sole equity owner of Equitable, would exercise reasonable diligence to protect their interests rather than accede to the looting of the Company. We cannot exonerate her for her failure to discharge her duties to the investors.

Remanded for further proceedings not inconsistent with this opinion.