**STATE MUTUAL LIFE ASSURANCE CO. OF AMERICA et al., Plaintiffs,**

v.

**ARTHUR ANDERSEN & CO., Defendant.**

**ARTHUR ANDERSEN & CO., Defendant and Third-Party Plaintiff,**

v.

**Joseph H. BONURA et al., Third-Party Defendants.**

**No. 71 Civ. 4036 MIG.**

United States District Court,
S. D. New York.

July 2, 1974.

Wachtell, Lipton, Rosen & Katz, New York City, for plaintiffs; George A. Katz, Douglas S. Liebhafsky, Robert B. Mazur, New York City, of counsel.

Dunnington, Bartholow & Miller, New York City, for defendant and third-party plaintiff; Charles L. Stewart, William M. Bradner, Jr., John A. Stichter, New York City, of counsel.

Amend & Amend, New York City, for third-party defendant Empire National Bank; Richard L. Schmeidler, Robert I. Harwood, New York City, of counsel.

Rubin, Wachtel, Baum & Levin, New York City, for third-party defendant Meckler; Stephen A. Marshall, New York City, of counsel.

GURFEIN, District Judge:

State Mutual ("State") moves for the separate trial of its claims against third-party defendant Empire National Bank ("Empire").

This case is so complex that I have devoted intensive study over several months to the possibility of breaking it up so that all issues need not be tried in one trial involving all the parties. I have reluctantly come to the conclusion that in fairness to the defendants, it is not possible at this time to grant the motion for a severance by State [1] under Fed.R.Civ.P. 42(b).

This action arises out of the financial collapse of Black Watch Farms, Inc. which raised, bred and sold purebred Aberdeen-Angus cattle for its own account and for the account of "herdowners" who had purchased their herds from Black Watch. The "herdowners" were essentially interested in tax shelter.

Jack R. Dick ("Dick") created Black Watch as a limited partnership in the 1960's. In 1968 he sold his 57% of the combined general and limited partnership interests to Bermec Corporation ("Bermec") which acquired the balance of the partnership's interest. On September 4, 1970, Black Watch, Inc. filed a Chapter XI petition in this Court. It is presently in reorganization here under Chapter X of the Bankruptcy Act.

### Introductory

State and affiliated insurance companies bought $10,350,000 of Black Watch debt securities in aggregate from 1968 through 1970. A "loan agreement" was executed in 1968. In 1969, State bought more notes from Bermec and a 50% equity position in Black Watch.

Arthur Andersen & Co. ("Andersen"), auditors, certified the Black Watch financial statements for June 30, 1968 and June 30, 1969 and rendered a "compli-

---

1. Other insurance company plaintiffs similarly situated as State Mutual are collectively referred to as "State."

ance certificate" as at June 30, 1969 with respect to the 1968 Loan Agreement.

## The Pleadings

1. The original complaint was by State against Andersen claiming wrongful acts by Andersen in connection with the financial statements mentioned. The complaint avers twenty claims for relief grounded upon: (a) violation of the fraud provisions of the federal securities laws; (b) common law fraud; (c) negligence; and (d) breach of retainer agreements between Andersen and Black Watch of which plaintiffs (State) were third-party beneficiaries. Andersen answered with general denials and affirmative defenses.

2. Andersen also filed a third-party complaint against Dick, Joseph A. Bonura ("Bonura"), Herman L. Meckler ("Meckler") and Empire seeking indemnification in the event of a recovery by State against Andersen.

Dick was the creator of Black Watch.

Bonura was Black Watch's chief financial advisor.

Meckler was chairman of the board of Bermec.

Empire was Black Watch's principal bank. Black Watch obtained loans from Empire secured by herd-purchase notes made by herdowners. Empire also acted as State's agent under the 1968 Loan Agreement.

To understand the Andersen complaint, it is necessary to mention the "official check scheme." Dick, who died recently, from late 1966 through June 1968 caused Black Watch to purchase cattle from four ranches. He created fraudulent invoices reflecting such purchases at vastly inflated prices. For every installment payment indicated on a fraudulent invoice, Dick caused a Black Watch check to be issued to Empire to purchase an official check (cashier's check) of Empire payable to the appropriate vendor. Some of the official checks were actually sent to the vendors.

Other official checks were turned back to Empire which would then cash them for Dick over a purported blank endorsement in the name of the vendor-payee. The proceeds of the fraudulent checks allegedly amounted to $3,000,000 which was pocketed by Dick.

Andersen complains, *inter alia,* that the Dick embezzlement was with the complicity of Empire, that settlements of various herdowner claims were made between November 1968 and April 1969 with the knowledge of Empire and that Black Watch gave Empire a general release in exchange for Empire's silence. Meckler and Bonura are also charged with having participated in a cover-up, hiding the facts from Andersen. In essence, Andersen claims that Empire, Meckler and Bonura committed a fraud and deceit on Andersen.

3. Empire, in its answer, counterclaimed against Andersen and demanded a jury trial. For its counterclaim, Empire avers that in connection with its own loans to Black Watch it relied on Andersen's audit reports and certifications and suffered loss.

4. Empire also answered State's complaint against Andersen and demanded a jury trial. Empire denies the facts alleged to afford a basis for Andersen's liability to plaintiffs (State).

5. Andersen replied to Empire's counterclaim against it and, in addition to general denials, raised affirmative defenses.

6. After the foregoing pleadings had been filed, State, on January 26, 1973, brought a complaint against Empire, the subject of the instant motion, pursuant to Fed.R.Civ.P. 14.

The Rule 14 complaint charges Empire with acting in complicity with Black Watch, Andersen and others on the Black Watch fraud. It also sues Empire on agency theories and breach of fiduciary duty in failing to inform State of certain facts known to it. The complaint sets forth four claims for relief against Empire for (a) violation of

the fraud provisions of the securities laws; (b) common law fraud; (c) negligence; and (d) breach of duty as agent and fiduciary.

7. Empire answered State's Rule 14 complaint and asserted cross-claims against Andersen, Bonura, Meckler and Dick and demanded a jury trial of these issues. In addition to general denials, Empire filed seventeen affirmative defenses.

Empire asserts two cross-claims against Andersen, Bonura, Meckler and Dick, each of which is grounded upon a claimed right of indemnification or contribution in the event of recovery by State against Empire.

8. Dick, in his answer to Andersen's third-party complaint, asserts a counterclaim against Andersen asserting that he was defrauded by reliance on false Andersen certified *Bermec* financials in selling his Black Watch interest in Bermec in exchange for certain Bermec securities and that Andersen concealed the deteriorating financial condition of Bermec and Black Watch.

9. Andersen replied to Dick's counterclaim.

10. State also brought a Rule 14 complaint against Meckler.

11. Meckler answered and cross-claimed against Andersen for contribution or indemnification in the event he is held liable to State for false financial statements submitted to State.

12. Dick, Meckler and Bonura have answered Empire's cross-claims under State's Rule 14 complaint. They also cross-claim against Andersen for indemnity and contribution.

The foregoing is substantially the state of the pleadings. Although we are operating under notice pleading pursuant to the Federal Rules, the thrust and counter-thrust of complaints, counterclaims and cross-claims are somewhat reminiscent of Chitty's book on common law pleadings.

State now moves for a separate trial of its Rule 14 complaint against Empire under Fed.R.Civ.P. 42(b), and for limiting discovery to an early trial of the above. State contends that the trial of its claims against Empire will be relatively short and manageable. It notes that if it wins against Empire, which is good for a judgment, it will no longer trouble to go after Andersen and the others, for its claims will have been satisfied.

Empire says that such a separate trial would not be fair to it because it has cross-claims against Andersen, Meckler, Bonura and Dick for indemnity and contribution. Empire claims that State's case against Empire is not a simple one and that, in any event, massive discovery is still necessary before that action could proceed. It also asserts that it can prove that Andersen's activities were a supervening cause that prevented Empire's own conduct, assuming it was fraudulent, from being the proximate cause of State's injury.

State counters with the suggestion that Empire would still have the right to sue Andersen and the others. Empire replies that this would require the identical proof to establish liability that would be forthcoming in the separate trial, and involve needless repetition of the same evidence. Moreover, it wants its cross-claims tried at the same time.

Andersen and Meckler are naturally willing for State to go against Empire first because a victory by State against Empire might cause State to leave them alone. But they are afraid that they may be collaterally estopped on issues proved by State in the separate Empire action, and they want a stipulation that collateral estoppel or issue preclusion will not be asserted by Empire against them. This Empire refuses to do.

There is no doubt that Rule 42(b) gives a District Court a great deal of discretion. See Collins v. Metro-Goldwyn Pictures Corp., 106 F.2d 83, 87 (2 Cir. 1939) (Clark, J., concurring).

It may be true that a separate trial would be "in furtherance of convenience" of the plaintiffs. I cannot find,

however, that "separate trials will be conducive to expedition and economy", Rule 42(b), or more important, that separate trials will not prejudice Empire.

Though the pleadings have perforce been set forth in sketchy fashion, it may be conceded that the trial of all these issues between all these parties will not be easy for a trial judge to manage or a jury to sort out. Yet the alternative is to leave Empire with a possible judgment of a large amount against it with the burden of establishing to a *different* jury the alleged derelictions of Andersen and the others. A sense of fairness makes this seem uncalled for if Empire has a claim for relief against the others on its cross-claims.

It is not desirable before trial to decide fundamental questions of law before the facts are in, and I do not propose to do that here. But there must be some consideration, though tentative, of whether Empire may have tenable claims over against Andersen and the others.

The assertion by Empire that it may rely on Andersen's acts as cutting off the proximate causation of Empire's own misdeeds, while not to be rejected out of hand, does not sit well. For if Empire is really a fraudulent actor, it is perhaps true, that just as it probably cannot seek indemnification from a joint tortfeasor so it may not use him as a shield to escape liability.

It is doubtful, moreover, that the claim of indemnity will stand up if there is a recovery against Empire for having committed fraud under the securities laws. If the indemnification were contractual, as in an underwriting agreement, public policy would, in all likelihood, strike it down. See Globus v. Law Research Service, Inc., 418 F.2d 1276, 1287–1289 (2 Cir. 1969), aff'g Mansfield, J. (then District Judge), 287 F.Supp. 188 (S.D.N.Y.1968), cert. denied, 397 U.S. 913, 90 S.Ct. 913, 25 L.

Ed.2d 93 (1970). If public policy is the test, one might assume that noncontractual indemnification would be interdicted as well.

We should not be definitive, however, at this preliminary stage of the lawsuit, for if comparative fault concepts should be applied, it is too early to evaluate the factual findings that would serve as their predicate. See Ruder, Multiple Defendants in Securities Law Fraud Cases, 120 U.Pa.L.Rev. 597, 646–659.

We are on firmer ground when we consider Empire's cross-claim for contribution. While there is no express provision for contribution in Section 10(b) of the 1934 Act itself, a well-received gloss has been put on it by Judge Doyle, de Haas v. Empire Petroleum Co., 286 F. Supp. 809 (D.Colo.1968), aff'd in part, 435 F.2d 1223 (10 Cir. 1970), who implied the right of contribution in a 10(b) case from express provisions allowing contribution in Section 11(f) of the 1933 Act and in Sections 9(e) and 18(b) of the 1934 Act.

A step forward was taken by my colleague, Judge Frankel, in the seminal case of Globus v. Law Research, Inc., 318 F.Supp. 955 (S.D.N.Y.1970), where he held that a motion would lie for the recovery of contribution when the other defendants had been found by the jury to have been guilty of violations of the 1933 and 1934 Acts. He noted that where the defendants had all "been cast in joint and several liability" (*Id.* at 958) they could not shift the burden to the prompt and diligent party who paid the whole judgment. *Globus* was affirmed by the Court of Appeals, 442 F. 2d 1346 (2 Cir. 1971). As the Seventh Circuit put it recently, "If the . . . plaintiffs are too culpable to be entitled to indemnification, they may nonetheless be entitled to contribution." Madigan, Inc. v. Goodman, 498 F.2d 233 at 238 (7 Cir. 1974).[2]

---

2. In view of the ruling under the federal securities laws a determination need not be made now of whether the doctrine of Dole v.

Dow Chemical Company, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972), would be applicable in the common law claims.

*Globus* illustrates three points. First, that culpability may be a matter of degree, which suggests that its measure with respect to several defendants be determined by the *same* jury. Second, if more than one defendant is found guilty of a Securities Act violation by the *same* jury, the right to contribution can be asserted without a separate plenary action. Third, to sever Empire's cross-claim for contribution would subject it to possibly differing verdicts on the same facts before two different juries.

■ I hold, therefore, that where the defendant against whom separate trial is sought would be severely prejudiced in a bona fide claim for contribution, such a result was not intended by Rule 42(b).[3]

The motion for a separate trial of the Rule 14 complaint of State against Empire is denied.

Discovery will proceed on that basis.

---

3. The Court is making no decision which would foreclose any party from raising any point of law. This decision is entirely procedural. Just as I have pretermitted consideration of Dole v. Dow Chemical Co., *supra,* I also pretermit consideration of whether it will ultimately be found that *de Haas* and *Globus, supra,* apply where the alleged fraud of each party was not committed *via* a common document as it was in those cases, e. g., a proxy statement or a prospectus in which all defendants participated. Reconsideration is not prevented by Judge McLean's decision denying summary judgment to Empire on Andersen's claim to contribution against it.