INDEX FUND, INC., Plaintiff,

v.

**Robert R. HAGOPIAN et al., Defendants.**

**FIRST NATIONAL CITY BANK and First National City Trust Company (Bahamas) Limited, Defendants and Third-Party Plaintiffs,**

v.

**Frank P. ADAMS et al., Third-Party Defendants.**

**No. 73 Civ. 2665 (CHT).**

United States District Court,
S. D. New York.

June 30, 1976.

Shearman & Sterling, New York City, for defendants and third-party plaintiffs First National City Bank and First National City Trust Co. (Bahamas) Limited; Werner L. Polak, Edward J. Boyle, New York City, of counsel.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for third-party defendants Frank P. Adams and Ralph S. Henry; Charles M. McCaghey, Bruce E. Pindyck, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

This is a motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on behalf of two of the third-party defendants, Frank P. Adams ("Adams") and Ralph S. Henry ("Henry"), for dismissal of the third-party complaint on the ground that said complaint fails to state a claim upon which relief can be granted.

Essentially, the complaint alleges a broad-based scheme to defraud the plaintiff with respect to the purchase by plaintiff of worthless securities from a newly organized "off-shore" mutual fund composed of several of the individual defendants in this action and collectively referred to as the "Armstrong Fund." The complaint charges violations of Section 17(a) the Securities Act of 1933 ("the Act"), 15 U.S.C. § 77q(a); Sections 10 and 15 of the Securities Exchange Act of 1934 ("the Exchange Act"), 15 U.S.C. §§ 78j, 78o; Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5; Sections 17(e)(1) and 36 of the Investment Company Act ("the Investment Company Act"), 15 U.S.C. §§ 80a–17(e)(1), 80a–36; Section 206 of the Investment Advisers Act ("the Advisers Act"), 15 U.S.C. § 80b–6; and the commission of acts of common law fraud on the part of defendants.

Plaintiff Index Fund, Inc. ("Index Fund"), a Massachusetts corporation, was an open-end investment company registered under Section 8 of the Investment Company Act, 15 U.S.C. § 80(a)8. Index Fund commenced its lawsuit on or about June 13, 1973 against First National City Bank ("FNCB"), the latter's subsidiary, First National City Trust Company (Bahamas) Limited ("FNCT"), and others, claiming damages in the amount of $1,010,151.00.

According to the allegations of the complaint, defendant Robert R. Hagopian ("Hagopian") was at all times relevant president of Index Fund and president and chairman of Index Fund's investment adviser. (Complaint, ¶ 4). Defendants Everest Management Co. ("Everest"), John Peter Galanis ("Galanis") and Akiyoshi Yamada ("Yamada") in concert with or aided and abetted by defendants Hagopian, Takara Partners, Louise Yamada, Inc., Louise Yamada, Provident Securities, Inc., Pericles Constantinou and others entered into a conspiracy to defraud the Armstrong Fund and its shareholders by depleting the assets of the Armstrong Fund for the personal gain of the conspirators.[1] (Id., ¶ 21). Galanis and Yamada entered into an arrangement with Hagopian whereby Hagopian, in consideration of monetary payments and other inducements paid to him by Galanis and Yamada, caused Index Fund to purchase securities at an aggregate cost to Index Fund of $1,736,505.00, which securities were either worthless or purchased at inflated prices. (Id., ¶ 23). Index Fund alleges that these securities were purchased from several sources, including the Armstrong Fund. (Id., ¶ 22). Index Fund further alleges that these securities were sold or otherwise disposed of by Index Fund for $726,354.00, resulting in an aggregate loss to Index Fund of $1,010,151.00. (Id., ¶ 24). FNCT agreed to be transfer agent, registrar and corporate domiciliary for Armstrong Fund

1. According to the complaint, defendants Hagopian and Galanis have been convicted of, and defendant Yamada has been indicted for, criminal violations of the federal securities laws arising from the acts and transactions which are the subject of this lawsuit.

and agreed to provide all the officers and directors (but one) for defendants Armstrong Investors and Armstrong Capital, which corporations administered the Armstrong Fund. (*Id.*, ¶ 19).[2] According to the complaint, the basis for the inclusion of FNCB and FNCT in the complaint appears to be that FNCB, FNCT and the officers and directors provided by them, failed to exercise proper influence and control over the activities of the Armstrong Fund, thereby permitting the transactions entered into by Index Fund, which allegedly were negotiated by Galanis and Yamada and by Hagopian on behalf of Index Fund. (*Id.*, ¶ 28).

On or about September 21, 1973 FNCB and FNCT filed an answer including cross-claims against all other co-defendants other than Armstrong Investors and Armstrong Capital. In their answer, FNCB and FNCT allege that whatever damages were sustained by Index Fund were caused in whole or in part or were contributed to by reason of the carelessness, negligence or wrongdoing of Index Fund, its officers and directors and agents. (Answer, ¶ 78). FNCB and FNCT also allege that Index Fund may not assert the claims alleged in the complaint against FNCB and FNCT because Index Fund, its officers and directors and agents, participated in or knew or in the exercise of reasonable diligence should have known of the alleged wrongdoing and made no attempt to terminate the alleged wrongdoing. (*Id.*, ¶ 79). FNCB and FNCT also allege that Index Fund may not assert the claims alleged in the complaint against FNCB and FNCT because Index Fund, its officers and directors, had a duty to supervise the activities of Hagopian and of Index Fund's investment adviser, and failed to do so, which caused the alleged damages to Index Fund. (*Id.*, ¶ 81). FNCB and FNCT also allege that the acts of Hagopian are, or by attribution should be deemed to be, the acts of Index Fund and Index Fund is responsible

for and bound by the acts of Hagopian alleged in the complaint. (*Id.*, ¶ 82).

In the four cross-claims filed with the answer, FNCB and FNCT allege that co-defendants other than the Armstrong Fund were primarily responsible for the fraud committed on the Armstrong Fund and any consequences thereof would be their responsibility and their liability. (Cross Complaints, ¶¶ 94–131, incl.).

On or about October 1, 1973 FNCB and FNCT commenced a third-party action against, *inter alia*, those officers and directors of Index Fund who were not named defendants in the original action. The three causes of action alleged in the third-party complaint are all for indemnification and contribution with respect to any possible liability of FNCB and FNCT to Index Fund.

The third-party complaint (hereinafter cited as "T.P.C.") assumes the allegations of the complaint and alleges that, to the extent the violations described therein occurred, the third-party defendants are primarily liable for the liability which may have resulted. (T.P.C., ¶¶ 30, 31, 34, 38). It alleges that third-party defendants Adams and Henry were directors of the plaintiff at the time Hagopian was selected to assume his position of trust and responsibility as president and a director, and continued as directors during the period that Hagopian was performing the acts and misdeeds referred to in the complaint which are alleged to be in violation of various provisions of the Securities Act, the Exchange Act, the Investment Company Act and the Advisers Act and common law principles. It further alleges that as directors of Index Fund, Adams and Henry had a responsibility to supervise the activities of Hagopian and to be familiar with the investments of Index. (T.P.C., ¶¶ 23, 25, 27); and that Adams and Henry had positions of responsibility and trust as directors which imposed upon them a primary responsibility with respect to the

---

**2.** Defendant Armstrong Investors was an offshore fund engaged primarily in investments in United States securities for the benefit of foreigners. Its subsidiary, Armstrong Capital, served as the conduit of funds of Armstrong Investors for investments in the United States securities markets. (Complaint, ¶¶ 10, 11).

allegations of fraud in connection with the securities transactions of Index Fund. (T.P.C., ¶¶ 27, 28, 29, 31). The third-party complaint requests judgment against all third-party defendants jointly and severally, for all sums that may be adjudged against FNCB and FNCT. In essence, FNCB and FNCT seek to exculpate themselves by arguing that the directors were responsible for the loss to Index Fund. As a defense to the complaint they urge that the directors' wrongdoing is attributable to the corporation under agency theory; and as a charge in the third-party complaint they urge that the directors, individually, are responsible for Index Fund's loss.

Turning to the complaint we see depicted the creation of a so-called "off-shore" fund, the Armstrong Fund, formed in Panama by a group of conspirators in 1969 to attract foreign investors. This fund had an "investment adviser," Everest Management Corporation, officered, among others, by defendants Galanis and Yamada who were also the principal promoters of Armstrong Fund. In November or December 1969 FNCT agreed to be the transfer agent, registrar and corporate domiciliary for the Armstrong Fund and agreed to and did provide all but one of the officers and directors for Armstrong Fund. There is no claim that FNCB or FNCT were parties to any conspiracy although it is alleged that their names and reputations were used by the conspirators to induce foreign investors to invest in the Armstrong Fund. Beginning in February 1970, 190,000 shares of Armstrong Fund were sold to foreign investors at an initial offering price of $20 per share and the proceeds placed in Armstrong Fund's account with FNCB and thereafter invested for the account of Armstrong Fund by Galanis and Yamada in worthless, overpriced or otherwise improper securities. The stage was now set for the transactions which form the basis for the instant suit. In June 1970, as part of the conspiracy, Galanis and Yamada arranged with Hagopian, president of plaintiff Index Fund, and who controlled its investment activities, to purchase from Armstrong Fund and others worthless, overpriced or otherwise improper

securities, which were ultimately resold or disposed of by Index Fund at a loss in excess of one million dollars.

The first claim asserted in the complaint which is limited to defendants FNCB and FNCT essentially charges them with acts and omissions which assisted, facilitated or permitted the wrongdoers to effectuate their fraudulent scheme. The complaint specifies that FNCT disseminated certain material dated January 15, 1970 relating to the organization and operation of the Armstrong Fund, its investment policies, its management and that of its investment adviser, the relationship of the Armstrong Fund with FNCB and FNCT and the method to be employed for reporting on share values of the fund. It is charged that:

"At all relevant times, the officers and the directors of defendants Armstrong Capital and Armstrong Investors provided by defendants FNCB and FNCT exercised no influence or control over the activities of defendants Galanis and Yamada or over Everest or Zachary [a director of Everest] and permitted and authorized said persons and others to deal in and dispose of the securities and funds of the Armstrong Fund without proper supervision or direction." (Complaint, ¶ 28).

It is further charged that the material disseminated by FNCT dated January 15, 1970 relating to the Armstrong Fund contained representations that were false and misleading, that therefore the shareholders of Armstrong Fund asserted claims against FNCB and FNCT for the losses sustained by them, and that FNCB has compromised certain of these claims for $1,700,000. The nexus between the loss to the stockholders of Armstrong Fund occasioned by the company's purchase of worthless or undervalued securities from undisclosed sources and the loss suffered by Index Fund and its shareholders resulting from the purchase of worthless or undervalued securities from Armstrong Fund is somewhat hazy. The gravamen of the first claim, however, would appear to be that as a result of the acts and omissions of FNCB and FNCT and

the officers and directors supplied by them for the Armstrong Fund, plaintiff Index Fund has suffered losses through the acts and transactions of the scheme.

The second, third, fourth, fifth, sixth, seventh and eighth claims, asserted against all defendants, including FNCB and FNCT, arise under the Securities Act, the Exchange Act, the Investment Company Act, the Advisers Act, or in the commission of acts of common law fraud. The third claim asserts a Rule 10b–5 violation in that certain defendants "with the approval and acquiescence of defendants FNCB, FNCT and the Armstrong Fund," made certain misrepresentations or omitted material facts in connection with the sale of securities by Armstrong Fund to Index Fund. (Complaint, ¶ 39). The fifth claim, arising under the Investment Company Act, alleges that Hagopian, the president of Index Fund, accepted compensation for the purchase of the securities by Index Fund from Armstrong Fund "with the approval or acquiescence of the other defendants." (Complaint, ¶ 52). Again, in the seventh and eighth claims, the acts forming the gravamen of the cause of action were allegedly approved or acquiesced in by the other defendants, including FNCB and FNCT. Finally, the ninth and tenth claims, asserted only against FNCB and FNCT, charge that FNCB and FNCT and the Armstrong Fund directors and officers whom they had supplied failed to supervise and control the acts of agents of Armstrong Fund and Everest in violation of provisions of the various Federal statutes already referred to (ninth claim) and that in such failure to act they breached their common law fiduciary duties to plaintiff Index Fund (tenth claim).

FNCB and FNCT then commenced this third-party action against Henry and Adams, as well as others, demanding indemnification and contribution for any liability that FNCB and FNCT may owe to plaintiff Index Fund, claiming that the third-party defendants violated or caused or permitted violations of the various provisions of the Securities Act, the Exchange Act, the Investment Company Act and the Advisers Act and common law principles. According to the third-party complaint, Adams and Henry were directors of Index Fund at the time that Hagopian was selected as president and a director, and continued as directors of the corporation during the period that Hagopian engaged in the unlawful acts which form the basis of the main complaint. The third-party plaintiffs charge in their complaint that Adams and Henry failed in their responsibilities to supervise the activities of Hagopian and the investment activities of Index Fund. (T.P.C., ¶¶ 25–31, 34, 37–38).

Third-party defendants Adams and Henry brought this motion to dismiss the third-party complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a legal claim for relief by this Court. Movants' central contention is that the third-party complaint amounts to no more than a charge of corporate waste and mismanagement, and that the third-party plaintiffs lack standing to assert such a charge. Movants also contend that the complaint does not state a claim for indemnification or contribution cognizable under the federal rules. Lastly, movants contend that the third-party complaint allegations of "aiding and abetting" securities fraud must fail because third-party plaintiffs lack standing to assert a Rule 10b–5 violation, and moreover, the complaint fails to meet the requirement of Fed.R.Civ.P. 9(b) which requires that any allegation of fraud be stated with particularity.

 Third-party practice or impleader is permitted under Fed.R.Civ.P. 14 only where defendant can show that if he is found liable to the plaintiff, then the third party will be liable to it (the defendant).[3] Defendant's right to sue derives from the right of plaintiff asserted in the main ac-

**3.** Rule 14 provides in pertinent part:

 "(a) *When Defendant May Bring in Third Party.* At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action *who is or may be liable to him for all or part of the plaintiff's claim against him.* . . . ." (emphasis added).

tion. The third-party defendant's liability must be derivative of or secondary to that of the third-party plaintiff who is the defendant in the main action. The Rule serves merely as a procedural device to expedite the presentation of a claim having a substantive basis in law. The procedural device of impleader may be utilized only when the third-party complaint necessarily depends upon the outcome of the main claim against the defendant. This concept has been expounded upon in an insightful opinion by the Fifth Circuit as follows:

"[A]n entirely separate and independent claim cannot be maintained against a third party under Rule 14, even though it does rise out of the same general set of facts as the main claim.

"The question whether a defendant's demand presents an appropriate occasion for the use of impleader or else constitutes a separate claim has been resolved consistently by permitting impleader only in cases where the third party's liability was in some way derivative of the outcome of the main claim. In most such cases it has been held that for impleader to be available the third party defendant must be 'liable secondarily to the original defendant in the event that the latter is held liable to the plaintiff.' Stating the same principle in different words, other authorities declare that the third party must necessarily be *liable over* to the defendant for all or part of the plaintiff's recovery, or that the defendant must attempt to pass on to the third party all or part of the liability asserted against the defendant. Whichever expression is preferred, it is clear that impleader under Rule 14 requires that the liability of the third party be dependent upon the outcome of the main claim." *United States v. Joe Grasso & Son,* 380 F.2d 749, 750–51 (5th Cir. 1967) (citations omitted).

*See Southeast Mortgage Company v. Mullins,* 514 F.2d 747, 750 (5th Cir. 1975); *F. O. Majors v. American National Bank of Huntsville,* 426 F.2d 566 (5th Cir. 1970); *Stiber v. United States,* 60 F.R.D. 668, 669 (E.D.Pa.1973); *Murray v. Reliance Insurance Co.,* 60 F.R.D. 390, 391 (D.Minn.1973);

*Donaldson v. United States Steel Corp.,* 53 F.R.D. 228, 230 (W.D.Pa.1971); *Gambino v. United Fruit Co.,* 48 F.R.D. 28 (S.D.N.Y. 1969); *State Mutual Life Assurance Co. v. Peat, Marwick, Mitchell & Co.,* 49 F.R.D. 202, 212 (S.D.N.Y.1969); *Monarch Industrial Corp. v. American Motorists Insurance Co.,* 276 F.Supp. 972, 981 (S.D.N.Y.1967). *See also* 3 J. Moore, *Federal Practice,* ¶¶ 14.-04, 14.15.

■ In sum, then, Rule 14 requires that a defendant have a substantive basis for a claim against the third party and that the claim of liability to the defendant and third-party plaintiff accrue only upon a finding of defendant's liability to the plaintiff on the main claim. The third-party complaint must allege that the third-party defendant is liable to the defendant and not that the third party is liable to the plaintiff. *See F. O. Majors v. American National Bank of Huntsville, supra,* 426 F.2d 566; *Murray v. Reliance Insurance Co., supra,* 60 F.R.D. at 381; *Rose v. Chicago, Rock Island & Pacific R. R.,* 308 F.Supp. 1357, 1359 (W.D.Okl.1970); *Gambino v. United Fruit Co., supra,* 48 F.R.D. at 29. The relationship of the two sides of the third-party complaint has been described as the equivalent of "one of plaintiff-defendant." *Donaldson v. United States Steel Corp., supra,* 53 F.R.D. at 230.

This requirement encompasses both the notion of constitutional standing and a respect for plaintiff's litigative decision regarding whom to sue. Third-party defendants contend that the thrust of the complaint against them is corporate waste and mismanagement and that such claims are cognizable only when asserted by the neglected corporation or by a shareholder in a derivative action on behalf of the corporation. Third-party plaintiffs refute this contention, claiming that the complaint does not speak of corporate waste and mismanagement but is

"based upon the alleged fraud which is described in the complaint as being in violation of both provisions of the securities laws and common law principles. FNCT and FNCB have not asserted a

separate or independent claim for corporate waste but seek indemnity and/or contribution from third-party defendants Adams and Henry and others on the ground that these third-party defendants are responsible for the alleged fraudulent acts of Hagopian and others alleged in the complaint."

(Affidavit of Edward J. Boyle in Opposition to Motion to Dismiss the Third-Party Complaint, at 7).[4] Defendants and third-party plaintiffs further protest that

"[third-party defendants'] argument is in error because Adams and Henry are charged with permitting Hagopian's violations of the federal securities laws and common law principles as are FNCT and FNCB and are alleged to have a greater responsibility for these violations than either FNCB or FNCT."

(Defendants and Third-Party Plaintiffs' Memorandum in Opposition to Motion to Dismiss the Third-Party Complaint, at 12).[5]

■ Notwithstanding the vague protestations to the contrary, this Court agrees with the contentions of the third-party defendants and concludes that the third-party complaint fails to state a legal claim for relief. Directors are liable under state law for corporate waste and mismanagement when, in neglect of their duties, they permit officers and employees to mismanage the corporations' affairs. *See McDonnell v. American Leduc Petroleums, Ltd.*, 491 F.2d 380 (2d Cir. 1974); *Rapoport v. Schneider*, 29 N.Y.2d 396, 328 N.Y.S.2d 431, 278 N.E.2d 642 (1972); *Syracuse Television, Inc. v. Channel 9, Syracuse, Inc.*, 51 Misc.2d 188, 273 N.Y.S.2d 16 (Sup.Ct., Onondaga Co. 1966). However, the liability runs to the corporation, and the appropriate action may be maintained by the corporation or by a shareholder in a derivative action on behalf of the corporation.

■ Since FNCB and FNCT have no standing to sue Adams and Henry for corporate waste and mismanagement in a separate action, they have no standing to assert those claims by means of the procedural device of impleader. There is no substantive ground to support the claims of FNCB and FNCT against Adams and Henry. Rule 14 cannot be utilized to circumvent the requirement of standing. Even if defendants are found liable in the main action, they would have no standing to assert a cause of action against the directors on the ground that the latter breached their fiduciary and contractual duties to the plaintiff corporation.

The concept of standing restricts federal judicial power to "cases" and "controversies" within the framework of Article III of the United States Constitution. The claimant must convince the federal court that it has "a personal stake in the outcome of the controversy," *Flast v. Cohen*, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968), and that "the challenged [conduct] has caused *him* injury in fact," *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (emphasis added). The third-party complaint seeks to implead

**4.** Despite characterization of the claims, the third-party complaint charges that as directors of Index Fund, Adams and Henry had a responsibility to adequately investigate Hagopian's background before permitting his selection as president of the corporation and its investment adviser (T.P.C., ¶¶ 24, 25, 26); and a responsibility to supervise the activities of Hagopian and the investments of Index Fund (T.P.C., ¶¶ 23, 27, 28). It is alleged that the third-party defendants neglected or failed in these responsibilities in violation of their contractual and fiduciary duties as directors and therefore must bear "primary responsibility with respect to the allegations of fraud in connection with the securities transactions of Index." (Affidavit of Edward J. Boyle in Opposition to Motion to Dismiss the Third-Party Complaint, at 6–7, and referring to T.P.C., ¶ 31; Defendants and Third-Party Plaintiffs' Memorandum in Opposition to Motion to Dismiss the Third Party Complaint, at 12 and 16).

**5.** Defendants and third-party plaintiffs' further contention that "[i]f, in fact, the third-party complaint should be dismissed as only setting forth a claim for corporate waste and mismanagement, the underlying complaint would have to be dismissed for this same reason" (Memorandum in Opposition to Motion to Dismiss, at 9) is irrelevant and inapposite to a claim interposed under Rule 14.

.. 
746

Adams and Henry on the ground that they injured the plaintiff in the main action. This fatal defect in the complaint cannot be camouflaged by its prayer for indemnification and contribution where it admittedly charges that "third-party defendants are primarily liable for any loss or damage which may have been suffered by plaintiff." (T.P.C., ¶ 30).

There is no allegation in either the complaint or the third-party complaint that Adams and Henry and FNCB and FNCT were joint tortfeasors, or acted jointly in conduct injuring Index Fund, or even that FNCB and FNCT acted in reliance upon the actions of Adams and Henry. Indeed, the papers submitted by FNCB and FNCT rely for authority on cases permitting contribution among joint tortfeasors, but nowhere characterize the third-party defendants as such. (Defendants and Third-Party Plaintiffs' Memorandum in Opposition to Motion to Dismiss the Third-Party Complaint, at 13).

For the same threshold reasons, the third-party complaint fails to state a claim for securities laws violations. FNCB and FNCT fail to meet the purchaser-seller requirement of *Birnbaum v. Newport Steel Corp.*, 193 F.2d 461 (2d Cir.), *cert. denied*, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). This requirement, limiting the permissible plaintiffs in a Section 10(b) and SEC Rule 10b–5 action, has been expressly approved and adopted by the Supreme Court in *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). *See also Herpich v.*

*Wallace*, 430 F.2d 792 (5th Cir. 1970); *Odette v. Shearson, Hammill & Co., Inc.*, 394 F.Supp. 946, 959 (S.D.N.Y.1975); *Molasky v. Garfinkle*, CCH Fed.Sec.L.Rep. ¶ 94,470 (S.D.N.Y.1974); *Herzfeld v. Laventol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112 (S.D.N.Y.1974); Jacobs, *The Impact of Rule 10b–5*, ¶ 115.01 at 5–7 (1974).

The sole connection between the parties in the third-party complaint appears to be that *but for* the third-party defendants' failure to supervise the activities of Hagopian and Index Fund, no fraud would have occurred. The third-party plaintiffs have no standing to assert such claims, and cannot manufacture standing by requesting indemnification and contribution in a claim brought under Rule 14. Contribution is not a substantive legal theory, a violation of which gives rise to a cause of action at law. Contribution is a form of recovery which is available when one defendant can show that his fault was shared by a joint wrongdoer.[6]

Accordingly, third-party defendants' motion to dismiss the third-party complaint is granted and the third-party complaint is hereby dismissed with prejudice.

So ordered.

---

**6.** Although contribution in Rule 10b–5 securities cases, as well as common law fraud cases, has been authorized, that right has so far been limited to recovery among joint tortfeasors. *See Globus v. Law Research Service, Inc.*, 318 F.Supp. 955, 958 (S.D.N.Y.1970), *aff'd on opinion below*, 442 F.2d 1346 (2d Cir. 1971); *de-Haas v. Empire Petroleum Company*, 286 F.Supp. 809, 815–16 (D.Colo.1968), *aff'd in part and vacated in part on other grounds*, 435 F.2d 1223 (10th Cir. 1970); *Wassell v. Eglowsky*, 399 F.Supp. 1330, 1367 (D.Md.1975); *State Mutual Life Assurance Co. of America v. Arthur Andersen & Co.*, 63 F.R.D. 389 (S.D.N.Y.1974); *Herzfeld v. Leventhol, Krekstein, Horwath & Horwath, supra*, 378 F.Supp. at 135.

The third-party complaint in this action is distinguishable from that in *Odette v. Shearson, Hammill & Co., Inc., supra*, 394 F.Supp. at 958–59, which involved claims under the securities laws by a party with adequate standing. Because the Court concludes that the third-party complaint alleges no basis for a claim of contribution, there is no need to determine whether the facts alleged in the complaint comply with the particularity in pleading requirement of Rule 9(b), Fed.R.Civ.P., nor whether they would withstand a motion to dismiss on the basis of the recent Supreme Court decision in *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668, 44 U.S.L.W. 445 (1976).