366 So.2d 955 (1978)
William BRANNON
v.
Glenn L. BABIN et al.
No. 12266.
Court of Appeal of Louisiana, First Circuit.
November 20, 1978.
Rehearing Denied January 16, 1979.
*956 Charles N. Malone, Baton Rouge, of counsel, for plaintiff-appellee, William Brannon.
Glenn L. Babin, in pro. per.
Robert L. Kleinpeter, Baton Rouge, of counsel, for defendant-appellant, Stanley LaFargue.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
SARTAIN, Judge.
In this suit which is based on alleged false representations, Dr. William Brannan (Brannan) obtained a judgment in the district court against Glenn L. Babin (Babin) and Stanley LaFargue (LaFargue), jointly and in solido, in the amount of $30,000.00. Babin made no appearance and the judgment against him was by default. LaFargue now appeals. We affirm.
We deem it helpful to relate certain background facts which, though not related to LaFargue's averred liability here, form the setting for the present controversy.
On April 2, 1973, Brannan purchased from one Peter C. Brown for a cash consideration of $7000.00 some five thousand acres of land situated in Ventress County, Tennessee. On April 11, 1973, Brannan entered into an agreement to purchase from Babin an undivided one-half interest in an additional five thousand acres for a cash consideration of $4000.00. Either at this time or shortly thereafter, Babin told Brannan that he was attempting to purchase some four hundred eighty thousand acres. All of this property is described as "wild mountain land in eastern Tennessee." Attached to the above two instruments are various documents which purport to reflect land grant numbers, acreage totals, and appropriate recordation data.
Later, Babin called Brannan and stated that a policy of title insurance covering the four hundred eighty thousand acres was available at a premium cost of $100,000.00, of which amount $70,000.00 had been raised and the balance of $30,000.00 was needed. Brannan declined to express an interest at this time. Throughout the above, LaFargue's name was not mentioned.
Sometime during the late summer of 1974, one Harvey Martin called Brannan and stated that the $70,000.00 was being held in escrow by LaFargue, who was also going to obtain a title policy, and that if Brannan would loan Babin $30,000.00, this sum would be repaid and as a bonus Brannan would receive title to another 15,000 acres. On this occasion, according to Brannan, he was given LaFargue's telephone number.
Brannan testified that he then called LaFargue and confirmed the fact that the latter did indeed have $70,000.00 in an escrow account, that a title policy was available at a premium cost of $100,000.00, that *957 the requested $30,000.00 would be put into the same account, and that the policy would be picked up simultaneously with the payment of the premium. Brannan stated that he discussed this matter with LaFargue by phone on at least two occasions prior to September 4, 1974.
Based on the above assurances, Brannan then executed an agreement with Babin whereby Babin agreed to transfer to him 15,000 acres of the 480,000 acres. The recited consideration was $30,000.00 cash and "other valuable consideration." On this same date, September 4, 1974, Brannan gave to Babin a cashier's check for $30,000.00 payable to the joint order of "GLENN L. BABIN & STANLEY LAFARGUE & ASSOCIATES." On this check is the hand written notation "Obtain Title Insurance on Tenn Lands and purchase 15,000 Acres."
Several weeks later, Brannan read an article in the Wall Street Journal which detailed the activities of others in the sale of Tennessee mountain properties in what can best be described as a series of outright swindles. Brannan then wrote LaFargue on September 27, 1974, withdrawing from the "venture" and requesting the return of his $30,000.00.
LaFargue denies that he made any of the above statements upon which Brannan claims to have relied. He does, however, acknowledge having talked to him on one or two occasions prior to September 4, 1974. LaFargue claims that his sole responsibility in this matter was to represent Babin individually in an effort to obtain title insurance on the 480,000 acres.
The crucial question, of course, is one of fact, namely, did LaFargue tell Brannan that a title policy was available, that $70,000.00 was in his escrow account, and that all that was needed was $30,000.00. The trial judge concluded that LaFargue did make these statements, which were not true, and that in reliance thereon Brannan advanced the $30,000.00. We agree.
The judge a quo attached considerable weight to evidence that impeached testimony given by LaFargue. When Brannan failed to receive the return of his $30,000.00, he engaged the assistance of an attorney in New Orleans. On October 7, 1974, this attorney called LaFargue at his office in Baton Rouge and was advised that the $30,000.00 was still in escrow and if Babin would approve, LaFargue would release it to Brannan. LaFargue repeatedly denied having made such a statement but a recording of that conversation, which is in the record, conclusively establishes the falsity of his sworn testimony. The sum was not in his escrow account. To the contrary, the check had been immediately cashed and $16,000.00 of it was given to Babin.
Brannan argues alternative theories of recovery, namely, breach of fiduciary duty, negligence, breach of contract, and intentional tortious misrepresentation. Pretermitting the question of the applicability of other theories to the proven facts, we hold that Brannan has established a tort of intentional misrepresentation.
Our jurisprudence has recognized that Civil Code article 2315 affords a cause of action for damages resulting from misrepresentations made with knowledge of falsity and with intent to deceive which causes loss to another when that person reasonably relies upon the false statements. Wilder v. Wilder, 263 So.2d 730 (La.App. 1st Cir. 1972), writ refused 262 La. 1101, 266 So.2d 225; Swann v. Magouirk, 157 So.2d 749 (La.App. 2d Cir. 1963). Cf Ladas v. Savage, 284 So.2d 852 (La.App. 4th Cir. 1973).
For the above reasons, the judgment of the district court is affirmed at defendants' costs.
AFFIRMED.