The STRATTON GROUP, LTD., Plaintiff,

v.

Gerald SPRAYREGEN, Herman Sprayregen and Seymour Sprayregen, Defendants.

Gerald SPRAYREGEN, Herman Sprayregen and Seymour Sprayregen, Defendants-Third-Party Plaintiffs,

v.

MARSHALL, BRATTER, GREENE, ALLISON & TUCKER, Milton Hausen, Laventhol Horwath Accountants, f/k/a Laventhol, Krekstein, Horwath and Horwath, Moe Bordwin, Stanley Gruber, Lawrence N. Hurwitz, and David Cohen, Third-Party Defendants.

No. 76 Civ. 373 (KTD).

United States District Court, S. D. New York.

Feb. 12, 1979.

---

Aaron, Aaron, Schimberg & Hess, Chicago, Ill., for defendants-third-party plaintiffs Gerald, Herman and Seymour Sprayregen; Joel J. Sprayregen, Chicago, Ill., of counsel.

D'Amato & Lynch, New York City, for third-party defendant Laventhol; Robert E. Meshel, New York City, of counsel.

Newman & Schlau, New York City, for third-party defendant Moe Bordwin; Gerald L. Popovsky, New York City, of counsel.

Thomas J. Troiano, Bayville, N.Y., for third-party defendant Milton Hausen.

Donovan, Leisure, Newton & Irvine, New York City, for third-party defendants Marshall, Bratter, Greene, Allison & Tucker; James A. Magee, New York City, of counsel.

Goldschmidt, Fredericks, Levinson & Oshatz, New York City, for third-party defendant Stanley Gruber.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

This action was originally brought by the Stratton Group Ltd., [hereinafter referred to as "Stratton"] against Gerald, Herman and Seymour Sprayregen, three officers and/or directors thereof, [hereinafter collectively referred to as "the Sprayregens"] alleging violations of Section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, as well as claims of common law fraud and breach of fiduciary duty. The defendants, as third party plaintiffs, have individually filed complaints, pursuant to Rule 14, Fed. R.Civ.P., against seven third party defendants. Four of the third party defendants—Marshall, Bratter, Greene, Allison and Tucker ("Marshall Bratter"), Laventhol and Horwath Accountants ("Laventhol"), Moe

Bordwin ("Bordwin") and Stanley Gruber ("Gruber"), have moved, pursuant to Rules 12 and 9 of the Fed.R.Civ.P., to dismiss the complaints for failure to state a claim upon which relief can be granted or, in the alternative, for failure to plead fraud with the requisite particularity. A fifth third party defendant, Milton Hausen ("Hausen"), has moved for summary judgment.

The main action, as well as the third party action, emanate from an agreement, executed in April 1970, between John's Bargain Stores, as predecessor of Stratton, and N.L.P. Fredi Inc., a newly formed subsidiary of Stratton. Pursuant to said agreement, Fredi agreed to issue all of its common stock to Stratton and all of its preferred shares to the Sprayregen & Co., Inc. shareholders, which included only one of the third-party plaintiffs herein—Gerald Sprayregen. These preferred shareholders were given the option to put all their shares, staggered over a three-year period, to Stratton. The contract also imposed certain restrictions upon which funds were to be used by Stratton to pay the agreed consideration of $15,000,000 for the put:

> 3. (a) John's obligation to purchase Preferred Stock pursuant to paragraph 2 will be limited to monies available to John's and obtainable by it from its cash, notes, checks, drafts, treasury bills or any other cash item or current assets readily transferable and convertible into cash in excess of funds required by John's for the operation of its business as it is presently conducted ("Excess Cash") . . . .
>
> Funds necessary to operate John's business shall be determined by management prior to January 31 of the years 1971 through 1974, inclusive. Such determination of Excess Cash shall require the written approval and verification of independent public accountants selected by the Board of Directors of John's.

The Stratton complaint charges that Gerald and Herman Sprayregen, as officers and directors of Stratton, together with Seymour Sprayregen, as a Stratton director, engaged in a variety of fraudulent conduct calculated to induce Stratton to enter into the Agreement of April, 1970, which provided for a grossly inflated price to be paid for the shares to be put by the shareholders of Sprayregen & Co., Inc. thereunder. It was further charged that upon inducing the Agreement the defendants, to complete their fraudulent scheme, caused Stratton to pay for the put shares out of funds other than "excess cash," in violation of the conditions set forth in the Agreement. Plaintiffs argue that defendants' activities were violative of Section 10(b) and Rule 10b–5, as well as constituting common law fraud and breach of their respective fiduciary relationships with Stratton.[1] Suffice it to say that the complaint alleges intentional fraud and deception attributable to the Sprayregens.

The defendants have in turn charged, in their third party complaints, that should they be held liable to Stratton they are entitled to "indemnity, reimbursement and contribution" from third party defendants based upon the roles played by the various third party defendants in the execution of the April Agreement and the subsequent put made pursuant thereto.

*Marshall, Bratter*

Marshall Bratter, a partnership engaged in the practice of law, was apparently acting as legal counsel to both Stratton and Gerald Sprayregen during the time period relevant to this action.[2] It is upon this relationship that the three Sprayregens bring their third party actions against Marshall Bratter. More particularly, the com-

---

1. The original complaint contained a claim against Gerald Sprayregen for breach of contract. I dismissed this claim, with leave to replead, because of Stratton's failure to allege that Gerald Sprayregen was a party to the contract in issue. Upon Stratton's second failure to plead a viable contract claim I again dismissed.

2. According to the time sheets submitted by the Sprayregen's Marshall Bratter represented Stratton between January and March of 1971 and Gerald Sprayregen between September 1970 and February 1971.

plaints, each parroting the identical language, charge that:

Marshall rendered legal services in connection with the execution of the Agreements and the exercise of rights thereunder. Marshall was primarily responsible for the form in which the Agreements and the exercise of rights thereunder was structured, and Marshall drafted all documents pertaining thereto, including the documents by which the payments alleged in the Complaint were made. Third-Party Plaintiff relied on Marshall's expertise in connection with said matters and Marshall advised that said transactions were legal and proper, which advice Third-Party Plaintiff relied upon.

Third-Party Plaintiff believes that said transactions were legal and proper, but in the event that any Court determines that said transactions were not legal and proper, any and all liability imposed upon Third-Party Plaintiff in connection therewith would have been caused by Marshall's failure to exercise due diligence or reasonable care in the performance of its services. If Third-Party Plaintiff is subject to any liability because any condition was not fulfilled in connection with the exercise of rights and the making of payments under the Agreements, then Marshall is liable to Third-Party Plaintiff with regard thereto by reason of Marshall's failure to advise Third-Party Plaintiff with regard to said condition or the non-fulfillment thereof.

The damages, if any, which Third-Party Plaintiff may be subject to herein have been caused or brought about by the misfeasance, non-feasance, and negligence of Marshall in the performance of its services, and specifically in rendering advice that the Agreements and the exercise of rights thereunder were lawful and proper, without fault, negligence or fraud on the part of Third-Party Plaintiff contributing thereto. Therefore, if it is so determined that Plaintiff may recover as

against Third-Party Plaintiff, then Third-Party Plaintiff demands indemnity, full and complete contribution, and reimbursement from Marshall in any amount Plaintiff may recover, plus costs and expenses and reasonable counsel and accounting fees.

■ A complaint should be dismissed for failure to state a claim only when it can be demonstrated beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).

■ Applying this standard to the complaints lodged against Marshall Bratter I find all three complaints unable to survive the instant motion.

It is undisputed that the three Sprayregen complaints in issue stem solely from the attorney/client relationship between Marshall Bratter, Gerald Sprayregen and the Stratton Corp. Moreover, in this regard the complaints allege claims founded exclusively upon the law of negligence.

■ In order to state a valid claim for negligence, sufficient to withstand a motion to dismiss, a plaintiff must allege (i) the existence of a duty owed by defendant to plaintiff; (ii) breach of this duty; (iii) resultant injury to plaintiff; and, (iv) a causal relationship between defendant's conduct and plaintiff's injury.

■ Applying these elements to the individual complaints of Herman and Seymour Sprayregen, I find them woefully deficient. The complaints are void of any allegations whatsoever concerning what, if any, relationship existed between Herman, Seymour and the law firm of Marshall Bratter. Indeed, they do not contend, nor could they on the facts of this case, that there existed any attorney/client relationship between them and Marshall Bratter.[3] Absent such relationship they have failed to allege any basis

---

**3.** The fact that an attorney represents a corporation does not thereby make that attorney counsel to the individual officers and directors thereof. Since the Sprayregens bring this third-party action in their individual capacities there is simply no basis upon which to establish an attorney client relationship.

upon which a duty owed by Marshall Bratter to Herman and Seymour may be founded. Consequently, their complaints, as against Marshall Bratter, must fall.

■ Turning to Gerald Sprayregen a different analysis obtains. It appears that Marshall Bratter represented Gerald Sprayregen between September 1970 through February 1971. (See Third-Party Plaintiff's Exhibit A). Thus, he has established a relationship sufficient to state a claim for negligence. The question remains, however, whether a theory of negligence is sufficient to support a claim of contribution [4] in the instant action.

■ It is now settled that contribution is a remedy which is available to defendants guilty of violations of the federal securities laws.[5] *See, e. g., Rice v. McDonnell & Co., Inc.,* 442 F.Supp. 952, 954 (S.D.N.Y.1977). It is equally as clear, however, that the right of contribution in such cases has been limited solely to recovery among *joint tortfeasors.*[6] *See Index Fund, Inc. v. Hogopian,* 417 F.Supp. 738, 746 n.6 (S.D.N.Y.1976) (emphasis added). Thus, a necessary predicate for contribution in the instant action is an allegation that Marshall Bratter was a joint participant in the fraud alleged in the main action. *de Haas v. Empire Petroleum Co.,* 286 F.Supp. 309, 815–16 nn.9–10 (D.Colo.1968), modified in 435 F.2d 1223 (10th Cir.).

■ Applying this standard to the complaint in issue it is obvious that the complaint is totally deficient. There is simply no allegation whatsoever that Marshall Bratter was a joint participant in the alleged fraud. Indeed, the only conduct allegedly engaged in by Marshall Bratter was preparation of the Agreement of April 1970. Absent an allegation that the Agreement was somehow fraudulent *per se,* mere preparation of the Agreement is a far cry from the type of joint participation necessary for purposes of contribution. Indeed, even assuming Marshall Bratter was "negligent" in the preparation of the Agreement in issue, this would cast Marshall Bratter at best as an independent or concurrent tortfeasor. As such, Marshall Bratter does not fall within the doctrine of contribution.

■ Gerald Sprayregen argues that in order to state a valid claim under Rule 14, Fed.R.Civ.P., he must simply allege that

---

4. In addition to seeking contribution the Sprayregen complaints also request indemnity and reimbursement. The term reimbursement is of no legal import and will therefore be ignored. Indemnification, on the other hand, is a term with legal significance. It is defined as the shifting of the entire cost of tortious conduct to another party. Suffice it to say that indemnification is unavailable in a case alleging securities fraud. *See, e. g., Globus v. Law Research Services, Inc.,* 418 F.2d 1276, 1288 (2d Cir.), *cert. denied,* 397 U.S. 913, 90 S.Ct. 913, 25 L.Ed.2d 93 (1970). This same analysis applies to common law fraud since for reasons of public policy an intentional tort feasor may not escape liability for his conduct by totally shifting it to a joint tortfeasor. Thus, the only allegation of legal significance for purposes of the third-party complaints is one for contribution. The doctrine of contribution provides that one of two or more *joint wrongdoers* should not be required to pay more than his share of a common burden, or, stated differently, that no obligor should be unjustly benefited at the expense of another. *Gould v. American-Hawaiian Steamship Co.,* 387 F.Supp. 163, 170 (D.Del.1974), vacated on other grounds in 535 F.2d 761 (3d Cir.).

5. Contribution clauses are found in § 11 of the 1933 Act (15 U.S.C. § 77k), and in § 9 (15 U.S.C. § 78i) and § 18 (15 U.S.C. § 78r) of the 1934 Act. The contribution clause in Section 11(f) of the 1933 Act is typical of these provisions. It states:

> All or any one or more of the persons specified in subsection (a) shall be jointly and severally liable, and every person who becomes liable to make any payment under this section may recover contribution as in cases of contract from any person who, if sued separately, would have been liable to make the same payment, unless the person who has become liable was, and the other was not, guilty of fraudulent misrepresentation.

6. The essence of contribution, therefore, is the presence of joint tortfeasors. The term "joint tortfeasors" means that two or more persons are the joint participants or joint actors in the wrongful production of an injury to a third person. There the act of each is his own act but the acts are concurrent in, or contribute to, the production of the wrongful injury, so that each actor is, on his own account, liable for the resulting damages. *Alabama Great Southern R. Co. v. Allied Chemical Corp.,* 501 F.2d 94, 98 n.4 (5th Cir. 1974).

the third-party defendant "is or may be liable" to him and not that the third-party defendant is liable to the plaintiff in the main action.[7] This is undoubtedly true. *See, e. g., Index Fund, Inc. v. Hagopian*, 417 F.Supp. 738 (S.D.N.Y.1976). What Gerald Sprayregen fails to perceive, however, is that Rule 14 is merely a procedural device, the availability of which is governed by the above stated principle. Once the third party action is properly brought, the liability of the third-party defendant requires an independent substantive basis. In other words, Rule 14 does not in itself provide a substantive theory of recovery but stands merely as a procedural device. *Index Fund, supra*, 417 F.Supp. at 743–44.

In the case at bar Gerald Sprayregen grounds his third party action on the substantive law of contribution between joint tortfeasors. Consequently, it is upon Gerald Sprayregen's failure to state a claim capable of remedial action under the substantive law of contribution that the complaint in issue fails rather than upon a failure to satisfy the procedural requirements of Rule 14.

The same analysis applies with equal force to Gerald Sprayregen's attempt to seek contribution on the basis of common law fraud. A precondition of contribution between two parties is that they be joint tortfeasors, the absence of which precludes any claim for contribution. The complaints in issue fail to allege any joint participation between Marshall Bratter and the Sprayregens in the alleged fraud. In light of the frivolous nature of the actions filed against

Marshall Bratter, I find this an appropriate situation in which to assess costs and attorneys fees against the three Sprayregens on a pro rata basis.

## Moe Bordwin and Stanley Gruber

Moe Bordwin, an attorney, was retained by Stratton as counsel and was a member of its board of directors when the April Agreement was executed and when the put was exercised thereunder. Stanley Gruber was executive vice president of Stratton during this same period.

The third party complaints lodged against Bordwin allege that not only was he instrumental, as corporate counsel, in the execution of the Agreement in issue, but he was also responsible, in part, for Stratton's decision to make the payments in issue.[8]

The complaints filed against Gruber charge that as "a key member of Stratton's management" he had specific duties under the Agreement, which included an obligation to obtain verification from independent accountants as to the existence of "excess cash" for purposes of the put. The substantive basis for the complaints against Bordwin and Gruber are, once again, grounded in negligence.

Bordwin and Gruber argue that since the third party complaints against them allege only negligence, they suffer from the same substantive defect as the complaints dismissed against Marshall Bratter and should suffer a similar fate. I disagree.

---

7. He also urges that under this standard he need not base his third-party complaint for contribution upon the same theory contained in the main action. In this regard the Sprayregens curiously rely upon the Practice Commentary of Joseph McLaughlin accompanying § 1401 of New York Civil Practice Law and Rules. This reliance is inapposite for two reasons. First, the commentary is construing New York's contribution statute. This statute has nothing to do with the instant action since contribution in a federal action is governed by federal law. *See, e. g., Altman v. Liberty Equities Corp.*, 54 F.R.D. 620, 625 (S.D.N.Y.1972). Moreover, it is clear that under the federal rule contribution is limited to joint tortfeasors whereas § 1401, previously limited to joint tort

feasors, (Commentary at 362), has recently been expanded to include concurrent, successive and independent tortfeasors. It was this expansive application of § 1401 which prompted the Commentary relied upon by third-party plaintiff. Such reliance thereon is totally misplaced.

8. Again, the fact that Bordwin was counsel for Stratton adds nothing to the complaints of the individual Sprayregens. The attorney/client relationship existed, if at all, solely between Stratton and Bordwin. The Sprayregens cannot as strangers to this attorney client relationship now capitalize thereon.

Here, unlike the situation with Marshall Bratter, the individuals held executive positions in Stratton during the period relevant to this action. Given this relationship between the parties and the liberal construction of pleadings under the Federal Rules, the complaints, although cloaked in terms of negligence, will support allegations of intentional conduct on the part of Bordwin and Gruber sufficient to withstand the instant motion. Thus, I am unable to say beyond doubt that the complaints, however inartfully drawn, will under no circumstances entitle third-party plaintiffs to remedial action.

Turning to motions by Bordwin and Gruber under Rule 9, however, a different result obtains. Since I have liberally construed the complaints in issue to include intentional fraudulent activities in relation to the Agreement and the put thereunder, these activities must be pleaded with a certain degree of particularity.

In this regard, even the most liberal reading of the complaints before me fails to yield the degree of particularity contemplated under Rule 9. Accordingly, I dismiss the third party complaints against Gruber and Bordwin on this ground with leave for third party plaintiffs to replead within 20 days of this order to satisfy the requirements of Rule 9. In this regard, third party plaintiffs are directed to set forth in their amended complaints the precise fraudulent conduct engaged in by Bordwin and Gruber as joint tortfeasors with the Sprayregens. Complaints, such as those now before me, leveling at best vague and conclusory allegations of fraud will not be tolerated.

*Laventhol*

Laventhol is a partnership in business as certified public accountants. The three Sprayregen complaints, again employing identical language, allege:

Plaintiff Stratton entered into a contract with Laventhol for the performance of certain accounting and auditing services in the latter's capacity as certified public accountants and auditors for the year 1972.

Laventhol knew of the provisions of the April, 1970, Agreements prior to the time any rights thereunder were exercised. Laventhol also learned that the rights thereunder had been exercised on or about the date of said exercise.

Laventhol certified Stratton's annual report for the 52 weeks ending December 26, 1970, as of March 18, 1971, with the exception of note 10(d) thereof which was certified as of May 24, 1971. That report contained the following statement in note 6:

In February 1971 the Company purchased a portion of preferred shares for $1,200,000 plus securities carried at $835,385 (see Note 2) and agreed to purchase, subject to the availability of cash balance and excess cash, as defined, certain additional shares for $1,300,000, of which $300,000 is payable in September 1971 and the balance in December 1971. The total maximum aggregate consideration to be paid in 1971 for the aforementioned shares is $3,335,385 which has been reflected as a current liability in the accompanying consolidated balance sheet.

Nowhere in that report, or in any other oral or written statement, or in subsequent financial statements, made, certified and published by Laventhol did Laventhol state that it had not verified that excess cash was available to pay the holders of the rights under the put agreement; Laventhol also did not disclose that it knew of no other accountants who had made such verification.

In the event that Stratton had insufficient excess cash or assets to permit the exercise of said rights, Laventhol had an obligation to disclose said insufficiency and Laventhol breached said obligation.

In reliance upon Laventhol, the put agreement was exercised in about February, 1971.

In the event that Third-Party Plaintiff may be adjudged liable to Plaintiff, Third-Party Plaintiff's liability will be predicated on the making by Laventhol of statements, which were made by means

or instrumentalities of interstate commerce, including the mails, and containing untrue statements of material fact and/or omissions of material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading. Laventhol made said statements willfully and knowingly, knowing the falsity thereof, and with reckless disregard as to the truth thereof.

The acts and omissions of Laventhol alleged in this claim constitute violations of Laventhol's obligations and duties under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder.

The parties to said Agreements relied upon the expertise and professional advice of Laventhol with respect to the making of payments thereunder . . .

The complaints, founded upon common law negligence and fraud under Section 10(b) and Rule 10b–5, are all insufficient to withstand the instant motion to dismiss.

The complaints of Herman and Seymour Sprayregen are defective on two grounds. First, inasmuch as they attempt to state a claim for negligence they are deficient as a matter of law. As previously stated the touchstone for any negligence action is the existence of a duty running from a defendant to a plaintiff. In the instant action, the Sprayregens admit that Laventhol's only connection with the instant action stems from a contract entered into by Stratton, the corporation, and Laventhol pursuant to which Laventhol agreed to perform certain accounting functions for the corporations. Thus, any duty of due care owed by Laventhol ran, if at all, exclusively to Stratton and not to the Sprayregens in their individual capacities. Accordingly, the negligence claims must fail.[9]

More importantly, however, any claim of fraud under Section 10(b) and Rule 10b–5 is also defective under the *Birnbaum* rule. It is well settled that since Section 10(b) and Rule 10b–5 proscribe fraud only "in connection with the purchase or sale" of securities, it is a necessary predicate to any action brought thereunder that the plaintiff be a defrauded seller/purchaser. Nowhere in the complaints of Herman or Seymour is there any allegation that either individual bought or sold any securities in connection with the alleged fraud. Indeed, the parties admit in their memorandum of law that among themselves only Gerald Sprayregen participated in the put.[10]

Turning to Gerald Sprayregen, it would appear that since he was a shareholder who "put" shares to Stratton, he alone would be able to assert a claim under the securities laws.

There is, however, an internal inconsistency in the complaint before me that warrants dismissal. It is alleged that the report, upon which the 10(b) claim exclusively relies, was certified as of March 18, 1971. The "put" in issue, however, took place in February 1971. I am hard pressed to understand third-party plaintiff's factual allegation that it was upon this report that he, as a shareholder, officer or director, relied upon in February 1971.

It cannot be disputed that Gerald Sprayregen's complaint must, in order to state a viable 10(b) claim, allege that any fraudulent misrepresentations or omissions must have been made prior to the put in issue. *Denny v. Barber*, 576 F.2d 465, 468 & 470 (2d Cir. 1978). Since Gerald Sprayregen has failed to allege any statement or omission made by Laventhol prior to the sale of his securities the complaint must be dismissed. *Id.*

Again, in light of the frivolous nature of the suits filed against Laventhol, I find this

---

9. This same analysis would apply with equal force to Gerald Sprayregen. He, like the two other Sprayregens was not privy to Laventhol's agreement with Stratton to provide accounting services.

10. The Sprayregens further admit that there was only one put made pursuant to the Agreement in issue and this took place in February, 1971.

an appropriate situation in which to assess costs and attorneys fees against the Sprayregens on a pro rata basis.

## Milton Hausen

■ Milton Hausen was a director of Stratton and a shareholder of Sprayregen & Co., Inc. during the time relevant to this action. As such he participated in the put of February 1971 and was paid $37,650 for his shares thereunder. The complaints charge Hausen simply with participating in the 1971 put and request that should third-party plaintiffs be held liable, Hausen be required to contribute the amounts received by him.

Hausen argues that certain releases executed between himself, Stratton and N.L.P. Fredi, Inc. preclude any attempted contribution by the Sprayregens. Hausen reasons that this Agreement, executed in October 1975, provides that New York Law should control interpretation of the Agreement. Accordingly, applying Section 15–108(b) of the General Obligations Law, N.Y. Gen.Oblig.Law § 15–108(b) (McKinney 1976), where one tortfeasor settles with an injured party this relieves him from liability to any other person for contribution.

The Sprayregens argue that despite the plain language of the release, federal law should control any contribution and that contribution is clearly available thereunder as against a settling tortfeasor. They also argue that since the Sprayregens were not privy to the release it cannot act to defeat their right to contribution. Although this argument flies in the face of reason, in addition to the strong public policy favoring settlement of lawsuits out of court, I need not reach this interesting, albeit thorny, question for determination of the instant motion.[11]

As more fully set out above, Rule 14 is merely a procedural device which depends ultimately upon the existence of a substantive legal theory under which a third-party plaintiff may recover. The three complaints seeking contribution from Hausen are totally void of any substantive legal theory upon which the contribution is grounded. The mere participation in the put, without more, is unquestionably insufficient to support a claim for contribution. There must be at least some allegation that Hausen was a joint tortfeasor in the scheme to defraud allegedly engaged in by the Sprayregens. There is simply no indication, vague or otherwise, in the complaints before me that Hausen had anything to do with the fraudulent scheme or was even negligent in relation thereto.

Thus, the complaints filed against Hausen, as pleaded, are wholly without merit and are dismissed.[12]

Accordingly, the motions of the third-party defendants to dismiss are, as provided above, granted.

---

11. The federal law concerning contribution is, contrary to the assertions of the Sprayregens, far from clear. *Compare Sabre Shipping Corp. v. American President Lines*, 298 F.Supp. 1339 (S.D.N.Y.1969) *with Altman v. Liberty Equities Corp.*, 54 F.R.D. 620 (S.D.N.Y.1972).

On balance, I feel the better approach for a federal court would be to look to state law concerning contribution and its underlying principles. If these principles sufficiently vindicate the federal policy concerning contribution, they should be adopted. Indeed, absent a federal statute the parameters of contribution in relation to settling tortfeasors should not be defined in a vacuum.

Turning to the case at bar, the settled federal policy in permitting contribution in security fraud cases is to insure the deterrent effect of the securities laws. *Herzfeld v. Laventhol, Krekstein, Horwath & Horwath*, 378 F.Supp. 112, 135 (S.D.N.Y.1974), modified on other grounds in 540 F.2d 271 (2 Cir.). The policy underlying New York's contribution statute is to promote out of court settlement in multiple tort situations. *Rock v. Reed-Prentice Machinery Co.*, 39 N.Y.2d 34, 382 N.Y.S.2d 720, 346 N.E.2d 520 (1976).

I find these policies to be fully compatible. As long as the settlement, and concomitant release, are reasonable and not sham, the deterrent effect of the securities laws is sufficiently served. In addition, the settlement promotes New York policy at the same time.

12. Since determination of Hausen's motion did not require determination of the effect of the release upon the claim for contribution, Hausen's motion for summary judgment is not the appropriate motion. Accordingly, I will construe Hausen's motion as one for dismissal based upon Rule 12 of the Fed.R.Civ.P.

Settle judgments on seven days' notice notice. Costs and attorneys' fees where allowed may be determined by appropriate motion.