**Louis H. MARRERO IV, Plaintiff,**

**v.**

**Wilson P. ABRAHAM, Defendant and Third-Party Plaintiff,**

**v.**

**BANCO DI ROMA (CHICAGO), Taro Anstalt, Vaduz, Serafino Ferruzzi, Inter-Financing Exchange, S.A., Artfer, Inc., and Mississippi River Grain Elevator, Inc., Third-Party Defendants.**

Civ. A. No. 76–2891.

United States District Court,
E. D. Louisiana.

July 30, 1979.

Arthur A. Lemann, III, New Orleans, La., and David P. Seikel, Houston, Tex., for plaintiff.

Moise S. Steeg, Jr., Henry F. O'Connor, Jr., and James F. Willeford, Steeg & O'Connor, New Orleans, La., for defendant and third-party plaintiff Wilson P. Abraham.

Harry McCall, Jr., George W. Pigman and James P. Farwell, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, La., Daniel McKay, Frankel, McKay, Orlikoff, Denton & Kostner, Chicago, Ill., for third-party defendant Banco di Roma (Chicago).

Martin L. C. Feldman and Robert A. Kutcher, Bronfin, Heller, Feldman & Steinberg, New Orleans, La., for third-party defendants Artfer, Inc. and Mississippi River Grain Elevator, Inc.

SEAR, District Judge.

In April, 1976 defendant Wilson P. Abraham sold plaintiff Louis H. Marrero, IV 305,306 shares of stock in the International City Bank (ICB) of New Orleans, which represented a controlling interest in the bank. The total purchase price was $3,511,-019, of which Marrero paid $750,000 in cash. For the balance he executed a personal promissory note to Abraham for $861,019 and assumed Abraham's existing $1.9 million debt with Banco di Roma—Chicago (Banco). 281,339 shares were pledged as security for the note with Banco. Abraham had originally made a loan of $1.9 million in May, 1975 with Mutual Benefit Life Insurance Co. of Decatur, Alabama in order to purchase those shares and later refinanced that loan through Banco. As a result of his sale to Marrero, Abraham realized a profit of more than $1 million.

Soon after the sale the bank failed and the stock became virtually worthless. Marrero filed suit in September, 1976 against Abraham and several others, of whom only Abraham still remains a defendant. He alleges that Abraham induced him to purchase the stock through a series of misrepresentations and omissions, particularly concerning certain "problem loans" and Abraham's misuse of his position as chief executive officer. Marrero brought his suit under § 10(b) of the 1934 Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5; § 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a); the Louisiana Blue Sky Law, La.R.S. 51:715(A)(3); and the Louisiana Civil Code, Articles 1819 et seq. (defect of consent in the sale due to error and fraud), 2520 and 2541 et seq. (nonapparent defect in the article sold) and 2315 (intentional misrepresentation). In his prayer he seeks a variety of remedies, chief among which are damages, rescission of the purchase agreement, attorney's fees and pre-judgment interest.

In late 1978 Abraham uncovered certain facts during the discovery process. Among the most important was the fact that a time

deposit of $1.9 million by Taro Anstalt, Vaduz (Taro), a Liechtensteinian corporation, secured Marrero's loan with Banco and had secured Abraham's loan prior to that, although neither Marrero nor Abraham had known of the deposit. Moreover, Luciano Ricci, a vice-president of Banco, testified during deposition that he would not have proposed the loan but for the additional security. Based upon this evidence Abraham filed a third-party complaint for indemnity and, in the alternative, contribution against Taro, Inter-Financing Exchange, S.A., Banco, Artfer, Inc., Mississippi River Grain Elevator, Inc., and Serafino Ferruzzi, an Italian citizen who has a substantial interest, either directly or through other companies, in the last three mentioned companies and allegedly in the first two as well. Abraham alleges that these parties conspired to defraud Marrero by making financing available without disclosing that $1.9 million was deposited as security for the loan, thus inducing him to purchase the ICB shares. It is alleged that had Marrero known of the time deposit, he would have neither accepted the loan nor purchased the stock.

As of this time only Banco, Artfer and Mississippi River Grain Elevator have made an appearance. Banco has brought a Motion to Dismiss, which was argued orally on June 20, 1979, and taken under submission. Artfer and Mississippi River Grain Elevator have brought a very similar motion which all parties agreed to submit to the court without oral argument. The third-party defendants first argue that the third-party complaint fails to state a cause of action under Rule 10b–5. Second, they contend that even if it does state a cause of action under Rule 10b–5, it fails to state a claim for either indemnity or contribution under F.R.C.P. 14.[1]

*Sufficiency of the Third-Party Complaint Under Rule 10b–5*

By now the elements of a Rule 10b–5 offense are hornbook law. Plaintiff must establish

(1) that the omission or misrepresentation complained of was made in connection with the purchase or sale of securities,

(2) that the defendant acted with scienter,

(3) that the misrepresentation or omission was material,

(4) that he relied on the statements, and

(5) that such reliance was justifiable.

*Dupuy v. Dupuy*, 551 F.2d 1005, 1014 (5 Cir. 1977). The third-party defendants argue that certain of these elements are absent from the third-party complaint and that it should therefore be dismissed.

They first assert that the omission with respect to the $1.9 million time deposit was not made "in connection with the purchase or sale of a security." They base their argument on the following allegation in the third-party complaint:

"The purpose of the conspiracy by the third-party defendants was to allow Ferruzzi, through, with or by his co-conspirators, to exert control over Abraham and subsequently Marrero through their indebtedness to Banco, and to position himself to be able to acquire their ICB stock, in the event Abraham or Marrero defaulted on the note."

Third-party complaint, ¶ 20. According to the third-party defendants ¶ 20 demonstrates that Abraham grounds his claim upon omissions made with respect to a future sale, namely the sale that would occur in case the owner of the stock defaulted on his debt.

---

1. Banco also asserts that the Court lacks personal jurisdiction over it. However, there is enough evidence in the record for me to find that Banco had contacts with this district sufficient to support jurisdiction. Banco made the $1.9 million loan to Marrero in New Orleans at the same time as the Abraham-Marrero closing took place. Present in New Orleans at that time was Franco Moretti, Banco's agent, who presented the loan documents to Marrero and negotiated with him about some of the terms of the loan. Deposition of Louis H. Marrero, IV, January 5, 1977, pp. 70–71. The third-party complaint centers on this very loan, and Banco is therefore subject to this Court's jurisdiction. See *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974).

■ This argument misses the thrust of the third-party complaint. Abraham asserts that the third-party defendants deliberately withheld certain material facts from Marrero at the time of the sale from Abraham to Marrero in order to induce that sale. The fact that the ultimate purpose of this omission was to cause a sale sometime in the future is irrelevant to the legal sufficiency of the third-party complaint. Abraham has alleged that the omission by the third-party defendants was made knowingly and intentionally for the direct purpose of causing Marrero to purchase the stock. That allegation is sufficient under Rule 10b–5. See *Carroll v. First National Bank of Lincolnwood*, 413 F.2d 353, 357 (7 Cir. 1969).

■ The third-party defendants also argue that since Marrero has never asserted any claims against them for any fraudulent acts, even after he learned of the $1.9 million time deposit by Taro, their omissions could have been neither material nor relied upon. As to Banco this argument fails, for Marrero has filed suit in this district against Banco based upon its failure to disclose the $1.9 million deposit. *Marrero v. Banco di Roma (Chicago)*, C.A. 79–2344. While it is true that Marrero has asserted no claims against any of the other third-party defendants, the conclusion put forth by movants still does not follow. Every court that has considered the question has allowed additional tortfeasors in Rule 10b–5 cases to be joined as third-party defendants when the plaintiff has failed to join them as direct defendants. E. g., *Alexander & Baldwin, Inc. v. Peat, Marwick & Co.*, 385 F.Supp. 230, 237–38 (S.D.N.Y.1974), *deHaas v. Empire Petroleum Co.*, 286 F.Supp. 809 (D.Colo.1968), *aff'd in part and vacated in part on other grounds*, 435 F.2d 1223 (10 Cir. 1970). Marrero is not required to join every tortfeasor connected with his purchase in this lawsuit. His failure to assert any claim against five of the six third-party defendants may be noteworthy, but it hardly amounts to a judicial admission that none of them violated Rule 10b–5.

*Indemnity*

■ Abraham's claim for indemnity is based on the assumption that even if he did violate Rule 10b–5, the evidence will show that his tortious conduct was merely passive while that of the third-party defendants was active. In *Gould v. American-Hawaiian Steamship Co.*, 387 F.Supp. 163, 167 (D.Del.1974), *vacated on other grounds*, 535 F.2d 761 (3 Cir. 1974), the court stated,

"[M]ost of the cases on indemnity under the Securities Acts can be read to support the proposition that an unsuccessful defendant may obtain indemnity from one significantly more responsible for the injury to the plaintiff."

Accord, *Madigan, Inc. v. Goodman*, 498 F.2d 233, 238 (7 Cir. 1974). This standard is in accord with the general rule that one who is passively, vicariously or secondarily at fault may recover indemnity from one whose primary activity causes the damage to the plaintiff. *Acme Boat Rentals, Inc. v. J. Ray McDermott & Co.*, 424 F.2d 393 (5 Cir. 1970).

The present state of the law under Rule 10b–5 precludes any claim for indemnity in this case. Abraham can be held liable to Marrero for damages under Rule 10b–5 only if he acted with scienter, the intent to deceive, manipulate or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). The same applies to the claim brought under § 17(a) of the Securities Act and to all of the state law claims.[2] Even if scienter is defined to

---

**2.** Although it is arguable that § 17(a) of the Securities Act does not require proof of scienter, compare *Sanders v. John Nuveen & Co., Inc.*, 554 F.2d 790, 795–96 (7 Cir. 1977) (scienter required in private actions brought under § 17(a)) with *SEC v. Coven*, 581 F.2d 1020, 1025–28 (2 Cir. 1978) (scienter not required in § 17(a) lawsuit brought by the SEC), Marrero

has not attempted to distinguish the § 17(a) claim from that brought under § 10(b) of the Securities Exchange Act and Rule 10b–5, and I therefore treat them as coextensive. The Blue Sky Law, La.R.S. 51:715(A)(3) requires scienter, although it places upon the defendant the burden of disproving it. As its name implies, the tort of international misrepresentation un-

include recklessness, see *McLean v. Alexander*, 420 F.Supp. 1057 (D.Del.1976), one who acts with scienter is actively at fault and so not entitled to indemnity. The Second Circuit has held with respect to a similar claim for indemnity in a securities case:

"Since [the defendant] had actual knowledge of the omitted facts and failed to take corrective action, it would be incongruous to permit it to recover over."

*Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1289 (2 Cir. 1969) (*Globus I*). Accord, *Wassel v. Eglowsky*, 399 F.Supp. 1330, 1366 (D.Md.1975). Given *Hochfelder*, indemnity has no place in an action brought under Rule 10b–5. All claims for indemnity by Abraham should therefore be dismissed.

*Contribution*

█ It is well settled that there is a cause of action for contribution under Rule 10b–5. E. g. *Gould, supra, Globus v. Law Research Service, Inc.*, 318 F.Supp. 955 (S.D.N.Y.1970), *aff'd per curiam*, 442 F.2d 1346 (2 Cir. 1971) (*Globus II*). Although some courts have not considered whether state or federal law should apply, those courts that have reached the issue have concluded that the availability of contribution in any particular securities case is a matter of federal law. *Gould, supra*, 387 F.Supp. at 167, n.7, *Wassel, supra*, 399 F.Supp. at 367, *Globus II, supra*, at 958. In light of the established federal scheme for securities regulation, this rule makes good sense. Several of the sections of the 1933 Securities Act and 1934 Securities Exchange Act that explicitly create a private cause of action also provide for contribution among those found liable. § 11(f) of the 1933 Act, 15 U.S.C. § 77k(f), and § 9(e) and § 18(b) of the 1934 Act, 15 U.S.C. §§

78i(e) and 78r(b). One commentator reasons,

"[I]n an area involving judicially created implied remedies which add to an already established federal scheme, reference to pertinent provisions within the existing federal scheme would appear to be more appropriate and in keeping with a program of procedural and substantive rights Congress developed under the express remedies provided in the Exchange Act."

Fischer, "Contribution in 10b–5 Actions", 33 *Business Lawyer* 1821, 1829 (1978). In addition, treating contribution as a matter of federal law promotes uniformity, which is important in a scheme as comprehensive as the federal regulation of securities.

The third-party complaint charges that the various third-party defendants conspired to induce Marrero to purchase the ICB stock by making financing from Banco available. The third-party defendants argue that the complaint is defective under F.R.C.P. 14 because it fails to allege that they acted in concert with Abraham. In other words, because they were acting independently from Abraham, they contend that Abraham cannot recover over against them under F.R.C.P. 14.

The complaint and the third-party complaint allege two totally independent courses of conduct, both of them violations of Rule 10b–5 and both of them helping to induce the same transaction and cause the same injury. Rule 14 requires that a third-party defendant be sued under a cause of action which makes him liable over to the defendant for any liability that the defendant has to the plaintiff. A separate claim arising out of the same set of facts is not sufficient under the rule. *United States v.*

der La.C.C.Art. 2315 also requires proof of scienter. *Brannon v. Babin*, 366 So.2d 955 (La. App. 1 Cir. 1978).

This leaves two other pendent causes of action to consider. The first is for vice of consent in the contract due to error and fraud under C.C. Art. 1819 et seq. The standard remedy in such cases is rescission. *American Guaranty Co. v. Sunset Realty & Planting Co.*, 208 La. 772, 23 So.2d 409 (1945). Damages are available in an

Article 1819 claim only in cases where the seller declares that the object sold possesses some qualities which he knows it does not possess. C.C.Art. 2547. The last pendent cause of action is for a reduction in price under C.C.Arts. 2520 and 2541 et seq. because of a hidden defect in the article sold. In a reduction action, consequential damages (as opposed to reduction) are recoverable only where scienter is present. C.C.Arts. 2545, 2547.

*Joe Grasso & Son, Inc.*, 380 F.2d 749, 750–51 (5 Cir. 1967). The issue is whether two tortfeasors, albeit acting independently, can be considered concurrently at fault when their tortious conduct combines to cause the same harm. See *Avondale Shipyards, Inc. v. Vessel THOMAS E. CUFFE*, 434 F.Supp. 920, 931 (E.D.La.1977). If so, Rule 14 will permit contribution in this case.

The cases cited by the third-party defendants are not relevant because they fail to address this relatively narrow issue. *Getter v. R. G. Dickinson & Co.*, 366 F.Supp. 559, 569 (S.D.Iowa 1973) holds only that

> "[T]he cause of action for indemnity and contribution pleaded in the third-party complaint must be related to the cause of action pleaded in the complaint against the third-party plaintiffs."

It does not say what "related" is supposed to mean. *Liggett & Myers, Inc. v. Bloomfield*, 380 F.Supp. 1044 (S.D.N.Y.1974) holds that joint tortfeasors have a right to contribution under Rule 10b–5. It does not state whether tortfeasors whose independent acts have combined to cause a single injury also have a right to contribution.[3] In *Index Fund, Inc. v. Hagopian*, 417 F.Supp. 738 (S.D.N.Y.1976), the defendant tried to implead the plaintiff corporation's executive officers on the theory that it was their mismanagement rather than his fraud which damaged the plaintiff. There was no secondary liability in that case since only the corporation or its shareholders, via a derivative action, could bring an action for mismanagement. The third-party complaint was therefore dismissed because the third-party plaintiffs lacked standing. The peculiar facts in *Hagopian* make that case irrelevant here.

There are no securities law decisions on point, and there is no black-letter rule which I can adopt. See *Avondale Shipyards, supra*, Prosser, *Law of Torts* 291. I need therefore fashion a rule which seems the most reasonable and proper for the area of securities law. The Restatement of Torts 2d § 886A(1) states,

" . . . [W]hen two or more persons become liable in tort to the same person for the harm, there is a right of contribution among them even though judgment has not been recovered against all or any of them."

The authors of that section commented,

> "The rule stated in Subsection (1) applies to all 'joint tortfeasors' in the sense of *two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design*, nor is it necessary that they be joined as defendants. The rule stated applies to all torts, including not only negligence but also *misrepresentation*, defamation, injurious falsehood, nuisance or any other basis of tort liability." (Emphasis added)

Comment b to § 886A.

This passage from the Restatement describes precisely the situation presented here. If the allegations of both the complaint and the third-party complaint are true, Abraham and the Banco conspirators worked concurrently but independently, each misrepresenting or omitting material facts upon which Marrero relied in making his unfortunate purchase. Under the theory propounded by the third-party defendants, neither Abraham nor Banco would have a right to contribution, although each could be held liable to Marrero for the entire amount of damages caused by his purchase of the stock and although each would have a right to contribution had they worked on a common scheme. The distinction thus drawn has no logical relationship to the purpose of contribution, which is to allow a fair distribution of the damages among wrongdoers without absolving one at the expense of the others. *McLean, supra*, 449 F.Supp. 1251 at 1266–67, *Alexander & Baldwin, Inc., supra*, 385 F.Supp. at 238. Without contribution, as the court in *Gould* says, "[T]hose found liable for breach of a statutory obligation might escape liability

---

**3.** Prosser warns that treating "defendants whose negligence has concurred to produce a single result" as "joint tortfeasors" is a product of "careless usage." Prosser, *Law of Torts* 298.

as effectively as if they were entitled to indemnity." 387 F.Supp. at 169. Particularly in light of the deterrence policy of the securities laws, such a result makes no sense at all. *Alexander & Baldwin, Inc., supra.* If the allegations of the complaint and the third-party complaint are well founded, the defendant and the third-party defendants would be "concurrently at fault" for the damages suffered by plaintiff, even though their actions were completely independent, and contribution among them would be permissible.

Alternatively, the third-party defendants argue that there is no right of contribution in favor of one "who has intentionally caused the harm." That does indeed appear to be the general rule. *Restatement of Torts 2d* § 886A(3), Prosser at 308. This is an exception to the right to contribution among tortfeasors which was just discussed and is designed to prevent a person from using the courts to aid himself when he has intentionally caused harm to another. Comment j to *Restatement of Torts 2d* § 886A. At first glance it would appear that the exception should apply here, for in order for Abraham to be liable to Marrero for damages, he must have acted with scienter, the intent to defraud.

However, two courts have decided that the exception does not apply in the Rule 10b–5 context. In *Globus I, supra,* the court found "there was evidence from which an inference of fraudulent, wanton and willful misconduct" could be drawn. 287 F.Supp. at 192. Nonetheless, it allowed contribution on the theory that to deny it would dilute the deterrent impact of the securities law. *Globus II, supra,* 318 F.Supp. at 958. In *Alexander & Baldwin, Inc., supra,* the court stated,

"Because of the deterrent policy of the securities law, even intentional tortfeasors may obtain contribution so that other tortfeasors will not escape liability. This purpose will be served if defendant tortfeasors are allowed to implead any other tortfeasors involved in the fraud."

385 F.Supp. at 238. These cases are correct. If the securities laws are to serve their intended purpose, contribution among tortfeasors, including intentional tortfeasors, is essential.

Artfer and Mississippi River Grain Elevator press two additional arguments concerning contribution which require some brief discussion. First, they contend that in order for Marrero to recover against Abraham, the jury must find that Abraham was "more culpable" than the third-party defendants and that such a finding would defeat any right which Abraham might have to contribution. The premise for this argument is ill-founded. In order for both Abraham and the third-party defendants to be culpable, each has to have acted with scienter. If each acted with scienter, neither is "more culpable" than the other.

 The second argument relies upon *Gould, supra,* which held that the allocation of damages among tortfeasors in securities cases should be based in part on the benefit which each defendant has received from the violation. 387 F.Supp. at 171. The third-party defendants assert that only Abraham has received any benefit from Marrero's purchase and that the third-party complaint should therefore be dismissed because even if they did violate Rule 10b–5, they could not be held liable for any of the resultant damages. First, there is no evidence in the record which shows that Abraham was the only person to have benefitted from the sale to Marrero. More fundamentally, the *Gould* court refused to hold that damages in a securities case could be apportioned solely on an unjust enrichment theory, for such an apportionment would conflict with the rationale of contribution in securities cases, which is to require tortfeasors to share the financial burden caused by their actions and to deter wrongdoing in the securities field. *Id.* at 168–71. While in allocating damages among tortfeasors a court may wish to consider the benefits derived from the wrongful activity, the deterrent nature of contribution in securities case mandates that no Rule 10b–5 tortfeasor be allowed to escape liability completely. See *McLean, supra,* 449 F.Supp. at 1266–67, *Alexander & Baldwin, Inc., supra,* 385 F.Supp. at 238.

Accordingly, IT IS ORDERED that the Motion to Dismiss brought on behalf of Banco di Roma—Chicago and the Motion to Dismiss brought on behalf of Artfer, Inc. and Mississippi River Grain Elevator, Inc. are GRANTED as to the third-party claim for indemnity and DENIED as to the third-party claim for contribution.