**Rose McCOY, Plaintiff,**

v.

**Gary M. GOLDBERG and Gary Goldberg & Company, Inc., Defendants and Third–Party Plaintiffs,**

v.

**Stephen RUFFINO, et al., Third–Party Defendants.**

**No. 89 Civ. 8151 (WCC).**

United States District Court, S.D. New York.

Nov. 27, 1991.

Thelen, Marrin, Johnson & Bridges, New York City, (Paul A. Winick, of counsel), for third-party defendants Phoenix Leasing Income Fund VI and Phoenix Leasing Inc.

Parker Chapin Flattau & Klimpl, New York City, (Stephen G. Rinehart, of counsel), for defendants and third-party plaintiffs Gary M. Goldberg and Gary Goldberg & Co., Inc.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge:

Third-party defendants Phoenix Leasing Income Fund VI and Phoenix Leasing Incorporated (collectively, "Phoenix Leasing") move pursuant to Fed.Rule.Civ.P. 12(b)(6) for dismissal of the Third–Party Complaint insofar as it purports to assert claims for contribution and indemnity for common law fraud and punitive damages and for alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., and Section 10(b) of the Securities Ex- change Act of 1934, 15 U.S.C. § 78j(b). Third-party defendants also move to dismiss the Third–Party Complaint insofar as it may seek relief against them for causes of action other than those set forth in Count III of the Third–Party Complaint relating specifically to investments in Phoenix Leasing Income Fund VI.

## FACTS

In her Amended Complaint, dated November 27, 1990, plaintiff Rose McCoy, a part-time nurse, asserts six causes of action against Goldberg & Co., a securities brokerage and financial planning concern, and Gary M. Goldberg, its President, (collectively, "Goldberg") in connection with plaintiff's purchases of interests in twelve different limited partnerships. On January 28, 1991, defendants filed a third-party complaint against eleven of the limited partnerships, including Phoenix Leasing Income Fund VI, alleging that if the allegations of the Amended Complaint are true, then each of the partnerships made material representations and/or omissions of fact in connection with plaintiff's investments. Thus, third-party plaintiffs allege that the third-party defendants were direct participants in the misconduct alleged in the Amended Complaint and should be made to reimburse defendants, to the extent authorized by law, for any award rendered in plaintiff's favor against defendants in this action.

The Third–Party Complaint alleges that, in connection with a public offering of limited partnership interests in an equipment leasing program, Phoenix Leasing prepared and disseminated the prospectus to brokers and the public. T.P.C. ¶ 33. The Third–Party Complaint further alleges that Phoenix Leasing prepared a "Marketing Guide" and "Fact Sheet" for use by brokers. *Id.* These materials highlighted, *inter alia,* the following features of the program: (1) high predictable cash flow with average cash distribution of 21.5% per year; (2) a redemption feature to facilitate liquidation of

the units; (3) minimization of investment risk through all-cash equipment purchases; (4) partial sheltering of investment through depreciation and investment tax credit; (5) an experienced General Partner of Phoenix Leasing knowledgeable in all areas of equipment leasing and partnership operations; and lessees consisting primarily of "Blue Chip" corporations and federal and state governments. *Id.*

Plaintiff alleges that Goldberg made essentially the same representations, both orally and in writing, prior to her investment in Phoenix Leasing, and that these representations were false and misleading. Am.Cmplt. ¶¶ 29, 31(c), 43(a); T.P.C. ¶¶ 35, 37. In the Third–Party Complaint, Goldberg alleges that if the plaintiff's allegations are true, then the representations contained in the Phoenix Leasing materials were false. T.P.C. ¶ 36. Goldberg further alleges that it read and relied upon the offering material prepared by Phoenix Leasing and merely repeated and transmitted that information to the plaintiff. T.P.C. ¶¶ 34, 36, 38. Thus Goldberg contends that if it is liable to plaintiff under RICO, Section 10(b) and the common law causes of action, it is entitled to contribution and/or indemnity from Phoenix Leasing. T.P.C. ¶ 41.

## DISCUSSION

### Failure to State a Claim

In considering a motion to dismiss for failure to state a claim, the court "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to prevail on a motion to dismiss, the moving party must demonstrate "beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99,

102, 2 L.Ed.2d 80 (1957); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must accept as true the factual allegations accompanying the complaint and draw all reasonable inferences in favor of the non-moving party. *See Cosmas v. Hassett,* 886 F.2d 8, 12 (2d Cir.1989).

Third-party plaintiffs concede that indemnification and contribution are not available for violations of RICO and that indemnification is not available for violations of Section 10(b) of the Exchange Act or for common law fraud. Op.Mem. at 11. Third-party plaintiffs also concede that they are not entitled to indemnification or contribution for punitive damages. *Id.* As to these uncontested issues, third-party defendants' motion to dismiss is granted.

### A. *Contribution Under Section 10(b)*

The most significant contested issue remaining is whether third-party plaintiffs' Section 10(b) and common law fraud claims for contribution can withstand third-party defendants' motion to dismiss. The Court first addresses third-party plaintiffs' claim for contribution under the federal securities laws.

It is well settled that there is a cause of action for contribution under the federal securities laws. *See, e.g., Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180, 1185 (S.D.N.Y.1979). For violations of § 10(b) and Rule 10(b)–5 promulgated thereunder, this right of contribution exists between "joint tortfeasors." *See Greene v. Emersons, Ltd.,* 102 F.R.D. 33, 36 (S.D.N.Y.1983), *aff'd sub nom. Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 n. 1 (2d Cir.1984).

Considerably less well-settled, however, is the question of how to define "joint tortfeasor" in this context. Third-party defendants contend for a narrow definition of "joint tortfeasor" that would essentially exclude contribution claims in all cases except those between knowing participants in the same fraud. Goldberg urges a less stringent approach, one that would allow contri-

bution for independent tortfeasors. The Second Circuit has provided little guidance on the question. In fact, the Second Circuit has expressly declined to reach the issue in at least one opinion. *See Kenneth Leventhal & Co.*, 736 F.2d at 31 n. 1.

Nevertheless, Goldberg insists that the Second Circuit's limited statements on the question support the view that, in certain circumstances, contribution does not require that the third-party plaintiffs act cooperatively and in planned concert with the third-party defendants. Specifically, Goldberg quotes *Tucker v. Arthur Andersen & Co.*, 646 F.2d 721, 727 n. 7 (2d Cir.1981), to the effect that "under the securities laws, a person who has defrauded the plaintiff in violation of those laws may be liable for contribution to another person who has similarly defrauded the plaintiff." In *Tucker*, the Second Circuit agreed with the court below that the third-party complaint stated a valid claim for contribution under the securities laws.

Explaining *Tucker*, Judge Stewart noted the following in *Department of Economic Dev. v. Arthur Andersen & Co.*, 747 F.Supp. 922, 930 (S.D.N.Y.1990):

> [I]n stating that the securities law contribution claim in *Tucker* was proper, Judge Kearse implicitly had to have also concluded that an independent securities law violation committed by the *Tucker* third-party defendants against the plaintiff was also adequately alleged.

Thus interpreting *Tucker*, Judge Stewart lent his support to the view, originally articulated in *Marrero v. Abraham*, 473 F.Supp. 1271, 1277–78 (E.D.La.1979), that the existence of two alleged independent violations of Rule 10b–5, one alleged in the complaint and one alleged in the third-party

complaint, combining to produce a single injury to the plaintiff, may form the basis for a contribution claim under the federal securities laws. In *Department of Economic Dev.*, no such allegations were made, and thus the third-party plaintiffs' contribution claim was dismissed.

In the instant case, the Third–Party Complaint clearly alleges that "Third–Party Defendants, in connection with plaintiff's purchase of the units … employed devices, schemes or artifices to defraud, made untrue statements of material facts and omitted to state other material facts … all in violation of Section 10(b) of the 1934 Act and Rule 10b–5 promulgated thereunder." T.P.C. ¶ 39. The Third–Party Complaint also alleges that Phoenix Leasing "had actual knowledge" of its allegedly false and misleading statements and that "[p]laintiff's losses were proximately caused by third-party defendants' representations and omissions." *Id.* Further, the Third–Party Complaint alleges that defendants "were direct and active participants in, and aiders and abetters of, the conduct alleged in the Amended Complaint." T.P.C. ¶ 41.

In the face of such express allegations of third-party defendants' wrongdoing, third-party defendants have an extremely difficult burden on this motion to dismiss. Third-party defendants insist, however, that they have met this burden.[1] Citing *Stratton Group, Ltd. v. Sprayregen*, 466 F.Supp. 1180, 1187 (S.D.N.Y.1979), and *Greene v. Emersons, Ltd.*, 102 F.R.D. at 36, third-party defendants argue that Goldberg has failed to allege that Phoenix Leasing knowingly participated in the underlying fraud. The Court finds, however, that both these cases are distinguishable; in each, third-party plaintiffs failed to al-

---

1. The Court has considered and rejected third-party defendants' contention that Goldberg's claim for contribution *is really little more than* a cause of action for indemnification. Essentially, third-party defendants' assertion is based on the premise that the Third–Party Complaint alleges that Goldberg was a mere passive disseminator of Phoenix Leasing's offering materials and that Phoenix Leasing was the only wrongdoer. Phoenix Leasing, does not, however, cite a specific paragraph of the Third–

Party Complaint in making its assertions. And, in fact, the Third–Party Complaint itself alleges that third-party defendants "were direct and active participants in, and aiders and abetters of, the conduct alleged in the Amended Complaint." T.P.C. ¶ 41. This allegation does not characterize Goldberg as a mere "passive disseminator" and the Court thus finds that the Third–Party Complaint encompasses more than a mere claim for indemnification.

**205**

lege that the third-party defendants had violated the securities laws and had participated in the underlying fraud. As Judge Haight noted in *Greene*, the wrong to be deterred by the federal securities laws is fraud in the connection with the sale and purchase of securities. *See Greene*, 102 F.R.D. at 36; *see also Department of Economic Dev.*, at 933. Here, the Third–Party Complaint alleges just such a fraud on the part of third-party defendants. Thus allowing contribution in present matter is entirely consistent with *Greene* and *Stratton*. To require, as third-party defendants urge, a definition of "joint tortfeasor" that is narrow enough to eliminate Phoenix Leasing would be virtually to eviscerate the right of contribution under Section 10(b). Accordingly, the Court denies the instant motion to dismiss third-party plaintiff's contribution claim under Section 10(b).

### B. *Contribution for Common Law Fraud*

Goldberg maintains that the right of contribution for common law fraud in New York is even more expansive than the right of contribution under the federal securities laws. This Court agrees. In *Board of Educ. v. Sargent, Webster Crenshaw & Folley*, 71 N.Y.2d 21, 27, 523 N.Y.S.2d 475, 478, 517 N.E.2d 1360, 1364 (1987) (citations omitted), the New York Court of Appeals remarked that, with respect to contribution as codified in New York Law, "[t]he legislative history makes clear, and indeed we have recognized, that the statute applies not only to joint tortfeasors but also to concurrent, successive, independent, alternative and even intentional tortfeasors." Under this liberal standard and in light of the discussion above, it is clear that the Third–Party Complaint states a claim for contribution for common law fraud.

CONCLUSION

For the above stated reasons, third-party defendants' motion is granted in part and denied in part.[2]

SO ORDERED.

2. Third-party defendants had also moved to dismiss the Third–Party Complaint insofar as it sought relief against them for causes of action other than those set forth in Count III related specifically to investments in Phoenix Leasing Income Fund VI. That Phoenix Leasing should not be held liable for the actions of any third-party defendant other than itself is a self-evident proposition and one that is not contested by Goldberg. Thus, third-party defendants' motion on this non-issue merits no further consideration by the Court.